UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JENNIFER BERKELEY CARR,

                *Plaintiff,*

      -against-

NEW YORK CITY TRANSIT AUTHORITY, MARVA
BROWN AND DAVID CHAN,

                *Defendants.*

-------------------------------------------------------------------X

DOCKET NO. 16-CV-
09957

Hon. Deborah A. Batts

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P 56

**JAMES B. HENLY**
Vice President and General Counsel
**NEW YORK CITY TRANSIT AUTHORITY**
*Attorney for Defendants*
130 Livingston Street, Room 1212
Brooklyn, New York 11201
(718) 694-3893

**MARIEL A. THOMPSON**
*Executive Agency Counsel*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

I.     INTRODUCTION........................................................................................... 1

II.    STATEMENT OF THE UNDISPUTED FACTS ........................................... 1

    A.     PLAINTIFF'S FAILURE TO PROMOTE CLAIMS ........................ 2

        1.    The Position of Program Management & Oversight ("PMO")................................................................ 2

        2.    The Position of Program Management & Analysis ("PMA")................................................................ 2

    B.     PLAINTIFF'S RETALIATION CLAIM ............................................ 3

III.   SUMMARY JUDGMENT IS WARRANTED IN THIS CASE ...................... 6

    A.     PLAINTIFF'S FAILURE TO PROMOTE CLAIMS MUST BE DISMISSED ........................................................ 7

    B.     THE APPLICABLE LAW GOVERNING TITLE VII RETALIATION CLAIMS ....................................................... 11

    C.     PLAINTIFF'S RETALIATION CLAIMS FAIL FOR A NUMBER OF REASONS ............................................... 12

        i.    Plaintiff's 2014 and 2015 Managerial Performance Reviews ("MPR"s) were not "materially adverse" as a matter of law, and Defendants otherwise have irrefutably legitimate, non-discriminatory reasons for each MPR Plaintiff received ....................................... 13

        ii.   Plaintiff's dissatisfaction with her work assignments and Chan's work-related criticisms, her disagreement about his staffing decisions in his unit, and her complaints about Division-wide rules and policies as applicable to her, do not amount to actionable claims of retaliation, and Defendants otherwise articulated non-retaliatory, business-related reasons for any of its decisions and policies .............. 18

iii. The memoranda documenting Plaintiff's work progress were not "materially adverse", and the 2017 Letter of Reinstruction she received amounted to nothing other than a warning; Defendants otherwise had legitimate, non-discriminatory reasons for these actions, including Plaintiff's progressively poor work performance and insubordinate behavior towards Chan......................................20

iv. Brown's decision in or around April 2017 to decline permanent status for Plaintiff in the civil service title of "Administrative Staff Analyst" was not "materially adverse", was entirely unrelated to Plaintiff's September 2014 complaint, and was otherwise irrefutably legitimate and non-discriminatory..........................................................21

v. Plaintiff's complaints about Chan's purportedly demeaning tone, and management and communication style do not amount to actionable claims and he expressed the same high expectations to all his staff ....................................................................................................21

D. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS.................................................................23

E. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §§ 1981 and 1983 MUST BE DISMISSED........................................24

CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

**<u>Cases</u>** <u>Pages</u>

*Alfano v. Costello,*
 294 F.3d 365 (2d Cir. 2002)..................................................................... 23

*Ali v. Mount Sinai Hosp.,*
 No. 92 Civ 6129 (JGK) NG), 1996 U.S. Dist. LEXIS 8079,
 at *22-23 (S.D.N.Y. Jun. 12, 1996) ........................................................ 22

*Alston v. N.Y. City Transit Auth.,*
 14 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1998) ....................................... 22

*Alvarado v. Metro. Transp. Auth.,*
 No. 07, Civ. 3561 (DAB), 2012 U.S. Dist. LEXIS 48530 (S.D.N.Y. 2012) .................... 10

*Anderson v. Cahill,*
 417 F. App'x 92 (2d Cir. 2011) ............................................................. 24

*Anderson v. New York,*
 614 F. Supp. 2d 404, 424 (S.D.N.Y. 2009)............................................ 24

*Back v. Hastings on Hudson Union Free School District,*
 365 F.3d 107, 122 (2d Cir. 2004).......................................................... 25

*Benjamin v. Metro. Transp. Auth.,*
 No. 07-cv-3561 (DAB), 2012 U.S. Dist. LEXIS 110680 (S.D.N.Y. August 2, 2012)..... 23

*Berry v. Empire Homes Servs. LLC,*
 No. CV-06-2354 (DGT) 2010 U.S. Dist. LEXIS 25363,
 *36-40 (E.D.N.Y. 2010) ........................................................................ 14

*Brown v. Snow,*
 No. 02 Civ. 7985 (GEL), 2006 U.S. Dist. LEXIS 10251
 (S.D.N.Y. Mar. 13, 2006) ...................................................................... 18

*Burlington N. & Santa Fe Ry. Co. v. White,*
 548 U.S. 53, 68 (2006).......................................................................... 11

*Byrnie v. Town of Cromwell Bd. of Educ.,*
 243 F.3d 93, 103 (2d Cir. 2001).............................................................. 8

*Castro v. New York City Bd. of Educ. Personnel,*
 1998 U.S. Dist. LEXIS 2863,
 No. 96 Civ 6314 (MBM)(S.D.N.Y. Mar. 12, 1998) ............................. 21

**Cases** | **Pages**

*Chan v. NYU Downtown Hosp.*,
   No. 03 Civ 3003 (RMB), 2006 U.S. Dist. LEXIS 98887,
   *24-27-9 (S.D.N.Y. Feb. 14, 2006) .................................................................................. 20

*Chen-Oster v. Goldman, Sachs & Co.*,
   785 F. Supp. 2d 394, 408 (S.D.N.Y. 2011).................................................................... 10

*Clark Cty. Sch. Dist. v. Breeden*,
   532 U.S. 268, 273–74 (2001)......................................................................................... 16

*Coffed v. Xerox Corp.*,
   No. 07-CV-6114 CJS, 2009 U.S. Dist. LEXIS 84014,
   *36-37 (W.D.N.Y. 2009) ................................................................................................ 22

*Cox v. Onondaga County Sheriff's Dep't*,
   760 F.3d 139, 145 (2d Cir. 2014)................................................................................... 12

*Cunningham v. Consol. Edison, Inc.*,
   No. CV-03-3522 (CPS), 2006 U.S. Dist. LEXIS 22482,
   *55 (E.D.N.Y. Mar. 28, 2006) ....................................................................................... 14

*Curtis v. Airborne Freight Corp.*,
   87 F. Supp. 2d 234, 250-51 (S.D.N.Y. 2000) ............................................................... 23

*Davies v. N.Y.C. Dep't of Educ.*,
   563 Fed. Appx. 818, 820 (2d Cir. 2014)........................................................................ 15

*DeMarco v. Holy Cross High Sch.*,
   4 F.3d 166, 170-71 (2d Cir. 1993) ................................................................................. 23

*Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cnty.*,
   803 F. Supp. 2d 168, 178 (E.D.N.Y. 2011),
   *aff'd*, 469 F. App'x 66 (2d Cir. 2012)............................................................................ 10

*FDIC v. Great Am. Ins. Co.*,
   607 F.3d 288, 292 (2d Cir. 2010)..................................................................................... 6

*Field v. Tonawanda City School District*,
   604 F. Supp. 2d 544, 567 (W.D.N.Y. 2009) .................................................................. 24

*Fincher v. Depository Trust and Clearing Corp.*,
   604 F.3d 712, 720 (2d Cir. 2010)................................................................................... 11

*Fosen v. New York Times*,
   No. 03 Civ 3785 (KMK)(THK), 2006 U.S. Dist. LEXIS 75662,
   *15, fn5 (S.D.N.Y. Oct. 11, 2006)................................................................................... 8

**Cases**                                                                       **Pages**

*Galabya v. New York City Bd. of Educ,*
    202 F.3d 636, 640 (2d Cir. 2000)........................................................................... 12

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,*
    136 F.3d 276, 292 (2d Cir. 1998).......................................................................... 16

*Garrett v. Garden City Hotel, Inc.,*
    No. 05-CV-0962 (JFB)(AKT), 2007 U.S. Dist. LEXIS 31106,
    at *69-71 (E.D.N.Y. Apr. 19, 2007) ..................................................................... 14

*Gordon v. N.Y.C. Bd. of Educ.,*
    232 F.3d 111, 117 (2d Cir. 2000).......................................................................... 12

*Gross v. FBL Fin. Servs., Inc.,*
    |557 U.S. 167, 176 (2009) ...................................................................................... 7

*Hicks v. Baines,*
    593 F.3d 159, 170 (2d Cir. 2010).......................................................................... 12

*Hill v. Bloomberg,* L.P., No. 14-CV-9809 (CM) 2016 U.S. Dist. LEXIS 54114,
    *38-39 (S.D.N.Y. April 20, 2016) ........................................................................ 10

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC,*
    470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007)........................................................... 17

*Johnson v. N.Y.C. Dep't of Educ.,*
    39 F. Supp. 3d 314, 324 (E.D.N.Y. 2014) ........................................................... 15

*Joseph v. Leavitt,*
    465 F.3d 87, 91 (2d Cir. 2006)............................................................................. 20

*Kellman v. Metro,*
    No. 07 Civ. 3561 (DAB), 8 F. Supp. 3d 351, 375  (S.D.N.Y. March 26, 2014) ............... 8

*Klein v. N.Y. Univ.,*
    786 F. Supp. 2d 830, 846 (S.D.N.Y. 2011)........................................................... 13

*Leehim v. New York City Dep't of Educ.,*
    No. 17 Civ. 3838 (PAE), 2017 U.S. Dist. LEXIS 192747,
    *11 (S.D.N.Y. Nov. 21, 2017) ............................................................................. 21

*Lucenti v. Potter,*
    432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006)........................................................... 24

*Lucenti v. Potter,*
    432 F. Supp. 2d 347, 363-364 (S.D.N.Y. 2000) .................................................... 20

**Cases**                                                                 **Pages**

*Mack v. JP Morgan Chase Bank,*
    NA, No. 12-CV-8181 (DAB), 2016 U.S. Dist. LEXIS 44832,
    *22-23 (S.D.N.Y. March 24, 2016) ................................................... 10

*Martinez v. N.Y.C. Dep't of Educ.,*
    No. 04-CV-2728 (LTS)(DFE), 2008 U.S. Dist. LEXIS 41454,
    at *40 (S.D.N.Y. May 27, 2008) .................................................... 22

*Martinez-Santiago v. Zurich N. Am. Ins. Co.,*
    No. 07 Civ 8676 (RJH), 2010 U.S. Dist. LEXIS 4246,
    *37-38 (S.D.N.Y. Jan. 15, 2010) .................................................. 13

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) .................................................................... 7

*McPherson v. N.Y. City Dep't of Educ.,*
    457 F.3d 211, 216 (2nd Cir. 20016) ............................................ 22

*Mitchell v. Metro. Transit. Auth. Capital Constr. Corp.,*
    2018 U.S. Dist. LEXIS 119223, *38-40 (S.D.N.Y. 2018) ................ 20

*Nicastro v. Runyon,*
    60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) .................................... 20

*Patterson v. County of Oneida, New York,*
    375 F.3d 206, 224 (2d Cir. 2004) ................................................ 25

*Monell v. Dept. of Social Servs.,*
    436 U.S. 658, 694 (1978) ............................................................ 25

*Rasco v. BT Radianz,*
    No. 05 Civ 7147, 2009 U.S. Dist. LEXIS 21540,
    at *47 (S.D.N.Y. Mar. 17, 2009) .................................................. 24

*Setelius v. Nat'l Grid Elec. Servs. LLC,*
    No. 11-CV-5528, 2014 U.S. Dist. LEXIS 134789,
    2014 WL 4773975, at *20 (E.D.N.Y. Sept. 24, 2014) .................... 17

*Stembridge v. City of New York,*
    88 F. Supp. 2d 276 (S.D.N.Y. 2000) ............................................ 20

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
    663 F.3d 556, 570 (2d Cir. 2011) ................................................ 13

*Thornley v. Penton Publ'g Inc.,*
    104 F.3d 26, 29 (2d Cir. 1997) .................................................... 15

**Cases**                                                                        **Pages**

*Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.,*
    739 Fed. Appx 23, 24, 2018 U.S. App. LEXIS 17139, *1 (2nd Cir. 2018)...................... 13

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
    133 S. Ct. 2517, 2534 (2013) ......................................................................................... 12

*Villa v. City of New York,*
    No., 09-CV-7400 (DAB) 135 F. Supp. 3d 105, 119-120,
    2015 U.S. Dist. LEXIS 131633, *22-23 (S.D.N.Y. 2015)...................................................... 6

*Villar v. City of N.Y.,*
    135 F. Supp. 3d 105, 137 (S.D.N.Y. 2015)...................................................................... 24

*Weinstock v. Columbia Univ.,*
    224 F.3d 33, 42 (2d Cir. 2000)............................................................................................ 7

*Whidbee v. Garzarelli Food Specialties, Inc.,*
    223 F.3d 62, 68-69 (2d Cir. 2000) .................................................................................. 25

*Wright v. Goord,*
    554 F.3d 255, 274 (2d Cir. 2009).................................................................................... 15

# I.
## INTRODUCTION

Defendants New York City Transit Authority ("TA"), Marva Brown ("Brown") and David Chan ("Chan") submit this memorandum in support of their motion for summary judgment on all of Plaintiff Jennifer Berkeley-Carr's claims.  While Plaintiff has proffered a litany of complaints against her managers Defendants Brown and Chan in this action, the undisputed record reveals no evidence whatsoever of unlawful discrimination or retaliation, and no genuine dispute as to any material fact.  In fact, this case amounts to nothing more than Plaintiff's subjective disagreement with the legitimate, non-discriminatory business decisions of her managers, and her related personnel and work-related grievances that have been routinely excepted from judicial scrutiny.  Summary judgment is warranted.

# II.
## STATEMENT OF THE UNDISPUTED FACTS

Plaintiff is a 63-year-old African-American female of Caribbean descent, currently in the title of Director, Telecommunications & Systems in the TA's Division of Capital Programs, Department of Subways ("Capital Programs").   In this action, Plaintiff alleges that her long-time manager Marva Brown, Vice President & Chief Officer of Capital Programs, who is a 59 year-old African-American female of Caribbean descent, discriminated against her on the basis of her age, race and gender by not selecting her for two positions for which Plaintiff applied in 2013 and 2014 (*see* Ex A, Complaint).

Plaintiff concedes that two years prior to the hiring decisions at issue, Brown promoted her into her current position by creating for her the new title of Director, Telecommunications & Systems and giving her a 12% raise (*see, inter alia*, Pl. Dep., Ex B at 53; Ex P). Not-withstanding, and despite testifying to their good prior working relationship (Ex B at 108:8-10), Plaintiff now

challenges as unlawful Brown's subsequent decisions to appoint two slightly younger but longer-standing TA employees Joseph DiLorenzo (aged 54) and Defendant David Chan (aged 55) to two "Senior Director" positions for which she applied. Ex A. Brown testified that while Plaintiff was qualified for both positions, DiLorenzo and Chan were the best candidates for the jobs (*see* Ex C at 26-30; Ex's S and Y).

### A. PLAINTIFF'S FAILURE TO PROMOTE CLAIMS

### i.    The Position of Program Management & Oversight ("PMO")

The first hiring decision Plaintiff complains about was for the position of Senior Director, Program Management & Oversight ("PMO").  The selected candidate would be reporting directly to Brown, and would be in charge of managing and coordinating the capital program for tunnel lighting, line structures and line equipment (Ex Q).  An interview panel was created for this position, which included a representative from Human Resources and three Senior Directors in Capital Programs, including Amy Kaufman, Plaintiff's direct supervisor at the time (Ex R).

Following interviews, the members of the panel recommended four internal candidates to Brown: Joseph DiLorenzo, Franz Polycarpe, Plaintiff and David Chan, though Plaintiff was reportedly not anyone's top choice (*see* Ex C at 35, 42, 52 Errata sheet Ex G; Kaufman Dec.). Following second interviews of all four candidates, Brown ultimately selected Joseph DiLorenzo for the job. *Id.* at 35:15; 42:4 (Errata sheet); Ex S.  DiLorenzo has been with the TA since 1989, had years of relevant experience in stations and infrastructure (Ex S), and Brown had supervised him directly in Capital Programs when she was a Senior Director (Ex C at 26-28).  Brown explained that his experience, interview, and his technical background in architecture, which was important to her in filling this position, made him the best candidate for this position (*id.*).

2

ii.    **The Position of Program Management & Analysis ("PMA")**

In 2014, when Plaintiff's supervisor Amy Kaufman left the TA, Plaintiff applied for the vacant position of Senior Director, PMA (Ex's W, X). The selected candidate would be reporting to Brown and would be responsible for, among many things, overseeing all analysis for the Communications & Systems, and Elevators & Escalators program areas. *Id.* The interview panelists for this position were Deborah Chin, a Manager in Capital Program Management with whom Plaintiff had worked with closely, Jennifer Franceschini, Director of Client Services in Human Resources, and Brown. *See* Ex G; Chin and Franceschini Dec.'s. The panel ranked Chan as their top candidate, and Brown selected Chan. *Id.* Deborah Chin specifically did not believe that Plaintiff had the "right temperament" to advance to the next level or that they could work well together. Chan has been with the TA since 1987 and had many years of relevant experience in the TA's Division of Car Equipment overseeing the Capital Budget Capital Program. *See* Ex's N and Y. Further, he has an electrical engineering background, which Brown believed was very valuable for this area. Ex C at 28-29, 20-25. Brown testified that Chan's resume, technical background, his strong interview and references made him the best candidate for the job. *Id.*

**B.    PLAINTIFF'S RETALIATION CLAIM**

Upon learning that she did not get the PMA job for which she applied, Plaintiff complained to Brown's boss and asked for a reassignment out of Capital Programs, and she also filed an internal complaint with the TA's Department of Equal Employment Opportunity & Diversity ("EEO") on September 29, 2014, challenging Brown's hiring decisions and attempting to halt the hiring process for Chan (*see* Ex's F, CC), who became her new direct manager. She also complained to EEO in October 2014 that Brown's alleged failure to personally inform her about Chan's appointment was retaliatory (Ex DD), and in February 2015 complained that Chan sent her

3

work-related e-mails that were retaliatory (Ex FF), though she did not raise these concerns with Chan or Brown themselves.    Plaintiff specifically complained that Chan's e-mails were disrespectful and said things like "come see me" instead of "can you come see me?"  *Id.*   Plaintiff admits that she was "frustrated" and "angry" over Chan's appointment (*see* Pl. Dep., Ex B at 337), and that she said to Chan upon his introduction wherein he expressed excitement to work with her, "Don't worry I won't be here when you get here" (*id.* at 136:1-3).

Plaintiff thereafter strongly objected to a Managerial Performance Review ("MPR") Chan gave her on May 20, 2015 for the year 2014, nearly 8 months after her September 2014 complaint, as retaliatory (Ex KK, JJ).   This review was an overall "Good", with five "Goods" and two "Marginals" in the areas of "Team and Interpersonal Skills" and "Problem-Solving" (*see* Ex's KK, LL, NN).  The review was based in part on the input from Plaintiff's prior manager Kaufman, who supervised Plaintiff from January to May 2014, and had relayed to Chan challenges she faced with Plaintiff, such as, among other things, Plaintiff's increasing uncooperativeness and failure to keep Kaufman updated on work-related matters (*see generally* Kauffman Dec.; Ex OO; Ex T).   Chan experienced similar challenges with Plaintiff in the first 2.5 months of his job.    Plaintiff admits that she has "no proof" to support her retaliation claim, but "surmised" that Chan must have been informed about the September 2014 complaint she filed against Brown (Pl Dep., Ex B, 225:12-25; 226:1-7).  Plaintiff testified that the first time she informed Chan about filing a complaint against him was on June 4, 2015, when she objected to the 2014 MPR and told him she intended to file a complaint against him with EEO (*id.* at 162:15-25); Ex JJ.

Plaintiff's 2015 MPR, administered in or around April 2016 was another overall "Good", with three "Marginals", with the addition of "Organizing and Planning Skills" (*see* Ex OO).  Chan's review was the result of documented instances of missed deadlines on projects for which Plaintiff

had already been given generous deadlines, such as, among other things, an assignment she received in May 2015 to lead a task force to revamp a template Operating Impact Budget statement for Subways and Buses (Ex PP).  Plaintiff proffered excuses such as "she has no affiliation with the Department of Buses", and said she missed her deadline on December 18, 2015, because did not obtain concurrence from Buses, complaining that she should not have to go in-person to get a sign off on this project – this was unacceptable to her managers.  *Id.*  For the year 2016,  Plaintiff received an overall "Needs Improvement" pursuant to a new rating system (Ex SS), as a result of her progressively worse work performance (e.g., leaving for the day before an assignment was completed compelling Chan to stay late and finish it for her), and based on continued inappropriate conduct towards Chan, which included being openly hostile towards him, raising her voice and accusing him of "harassing" her and "hiding behind buckslips" when he assigned her work, corrected her work, or monitored her work progress (Ex SS).

Plaintiff also received a "Needs Improvement" review for the year 2017, issued in January 2018 (UU), which was based on, among other things, her continued disregard for deadlines, e.g., (failing to complete a time-sensitive task) and her continued disrespectful behavior towards Chan, culminating in a disrespectful outburst in front of other employees.  *See* Ex TT.  In or around March 2017, nearly three years after Plaintiff's complaint against her, Brown declined to approve Plaintiff for permanent status in the competitive civil service title of "Administrative Staff Analyst" in Capital Programs, a title for which Plaintiff had taken and passed a civil service examination, as a result of Plaintiff's performance and also to give her the opportunity to explore other areas, having said she was unhappy in Capital Programs (Ex Cat 363).    Plaintiff has not been demoted, suspended, or subject to any reduction in pay or benefits or material change in responsibilities following her complaints.  Moreover, in the immediate years following her

complaints (2015 and 2016), Plaintiff's salary increased by $4,232 (from $104,733 to $108,965 – Ex L) as a result of being eligible for General Wage Increases based on her satisfactory reviews (NN).   Though Plaintiff complains about a number of work-related issues, such as purportedly "unrealistic" work assignments, lack of support, being moved out of an office, and vacation request denials, in her deposition, she discusses several assignments she was given over the course of several years, and the lengthy amount of time she took to complete them (e.g., 8-9 months).   She acknowledges the assistance she was actually provided by the Analysts in Chan's group, despite them not being her "direct reports" (*see e.g.*, Pl Dep., Ex B at 183; 209-210).   She acknowledges Brown's Division-wide policy regarding vacation that at least one Director or Senior Director be present at all times in a given area, and her timekeeping records show that she took approximately 72 days of vacation from October 2014-June 2017 (Ex WW).   Plaintiff acknowledges that at her managerial Grade level, she is not entitled to an office, but rather, a Manager's Bay, where she currently sits (Ex XX), and that she was removed from an office that she temporarily occupied when someone in a higher Grade Level came in and had priority over her (Ex B at 89-90).

## III.

## SUMMARY JUDGMENT IS WARRANTED IN THIS CASE

As this Court articulated in *Villa v. City of New York*, No., 09-CV-7400 (DAB) 135 F. Supp.3d 105, 119-120, 2015 U.S. Dist. LEXIS 131633, *22-23 (S.D.N.Y. 2015), *citing*, *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010), on a motion for summary judgment, when the moving party has documented particular facts in the record, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Establishing this requires going beyond the allegations of the pleadings, as the moment has arrived "to put up or shut up." *Id.*, *quoting*, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)

6

(citation omitted).   In this case, Plaintiff cannot put up sufficient evidence to convince a reasonable juror that she has been the subject of unlawful discrimination or retaliation.

## A.   PLAINTIFF'S FAILURE TO PROMOTE CLAIMS MUST BE DISMISSED

As a threshold matter, it is undisputed that Plaintiff was informed she was not selected for the PMO position on February 3, 2014 (Ex 1, ¶21, 32; Ex 5 at 73:1-7).   She alleges that she filed a complaint with the EEOC on May 11, 2015, more than 300 days later, yet continues to pursue this claim in this action.   These claims must now be dismissed (*see* 42 U.S.C. § 2000e-5 (e) (1)), and are otherwise completely baseless.

Claims under Title VII and Section 1981 are analyzed under the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   First, Plaintiff must show by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she is qualified for her position and was satisfactorily performing her duties; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).[1]   Upon the Defendants' articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture, and for the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination.. *Id.*

Plaintiff cannot make out a prima facie case: Plaintiff cannot remotely present circumstances giving rise to an inference of discrimination, let alone refute Defendants' obviously legitimate, non-discriminatory reasons for selecting DiLorenzo and Chan for the two

---

[1] A claimant bringing suit under the ADEA must further demonstrate that age was not just a motivating factor behind the adverse action, but the "but-for" cause of it. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

positions at issue.  When asked what the basis for her claims were during her deposition, she

asserted at times that the decisions were more about age discrimination and at other times that

race and sex played a role (*see e.g.*, Pl. Dep. at 81, 361).  Plaintiff has since alleged to this Court

that her claim is based on "age discrimination",  apparently abandoning her claims of race and

gender discrimination (Docket No. 45).  However, DiLorenzo and Chan are aged 54 and 55 and

are thus members of the same protected category as her.  Moreover, Brown, the decision-maker,

is in all the same protected classes as Plaintiff. *See*, *e.g.*, *Fosen v. New York Times*, No. 03 Civ.

3785 (KMK)(THK), 2006 U.S. Dist. LEXIS 75662, \*15, fn5 (S.D.N.Y. Oct. 11, 2006) (noting

that any inference of discrimination is undermined by the fact that the decision-makers belonged

to the same protected class as the plaintiff). When asked whether she ever heard Brown say

anything derogatory about anyone's age, race or gender, either directed at her or in general,

Plaintiff responded "no" (Ex B at 83, 95, 99).

<u>Plaintiff does not argue that she was "more qualified"</u>: Plaintiff admittedly had no

knowledge of DiLorenzo or Chan's qualifications, prior work performance, background or

experience, and did not argue in substance that she was "more qualified" than them. Pl. Dep, Ex

B at 67; 86; 117-121. As this Court stated in *Kellman v. Metro*, No. 243, 8 F. Supp. 3d 351, 375

(S.D.N.Y. March 26, 2014), *citing, Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103

(2d Cir. 2001), a plaintiff who "seeks to prevent summary judgment on the strength of a

discrepancy in qualifications ignored by an employer" must have "credentials…so superior to the

credentials of the person selected for the job that 'no reasonable person, in the exercise of

impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

question.'" That is clearly not the case here.  Both Chan and DiLorenzo had respectively 13 and

11 more years of experience at the TA than Plaintiff, other relevant experience, educational

8

backgrounds with technical degrees (which Plaintiff does not have), and strong performances at their interviews. Regarding the PMO position, while Plaintiff claims she "heard" that she was one of the top two candidates recommended by the panel, she admits that she does not know how she ranked or whether she was one of the top two recommended by three of the panelists (*id.* at 77), and indeed she was not. Plaintiff even conceded that another candidate, Franz Polycarpe, was more qualified than she (*id.* at 83:1-4).

When asked whether she believed she was more qualified than Chan, Plaintiff initially stated that she "does not know" whether Chan was qualified (*id.* at 119-121), but that she knew *she* was qualified, and stated that she knew that he did not receive "Excellent reviews in the area of Communications." *(id.* at 117-121). It is not disputed that Plaintiff was qualified. However, the fact that Brown placed more emphasis on factors other than Plaintiff's tenure in her position was a legitimate business judgment. *See Byrnie*, 243 F.3d at 103 (internal citations omitted)("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments."). Plaintiff concedes she had worked "extensively" with Deborah Chin, one of the panelists who interviewed her for the PMA position (105), and yet Chin did not recommend her for the job based on her firsthand experience and belief that Plaintiff lacked the temperament for the job and that they would not work well together (Chin Dec). When Plaintiff was asked why she believes the decision was unlawful she testified "Chan is a younger Asian male" without proffering any additional reasons. (Ex 6 at 81-112).

Same Actor: Seriously undermining Plaintiff's entire claim is the fact that Brown advanced Plaintiff herself (53, 87-88), merely two years before the hiring decisions with which she takes issue, giving her a 12% raise and a new title. *See, e.g., Mack v. JP Morgan Chase Bank, NA*, No. 12-CV-8181 (DAB), 2016 U.S. Dist. LEXIS 44832, *22-23 (S.D.N.Y. March 24,

2016)(manager's decision to promote Plaintiff severely undermined the force of Plaintiff's argument that his discriminatory animus was behind the subsequent decision to terminate her). Plaintiff's conclusory testimony that she has not "seen" Brown promote, specifically, a 62 year-old African-American female to be her direct report, is legally unavailing.

Pattern and practice theory procedurally and substantively improper: Further, Plaintiff's reliance on unsupported, self-serving testimony that Brown's promotional practices are generally discriminatory and that she heard others felt that way too (e.g., 94-95; 121; 203d), is both procedurally improper in this case (see Alvarado v. Metro. Transp. Auth., No. 07, Civ. 3561 (DAB), 2012 U.S. Dist. LEXIS 48530 (S.D.N.Y. 2012), quoting Chen-Oster v. Goldman, Sachs & Co., 785 F. Supp.2d 394, 408 (S.D.N.Y. 2011)), and has otherwise been directly refuted with evidence.  Since Brown's appointment as Vice President & Chief, overseeing 32-38 budgeted positions (Ex O), she has made concerted efforts to increase diversity in her group, including hiring and/or promoting 14 African-American employees, approximately 16 employees over the age of 50, approximately five (5) over 60, and approximately 33 female employees (Ex Z, supported by TA 3601-3787). See Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cnty., 803 F. Supp.2d 168, 178 (E.D.N.Y. 2011), aff'd, 469 F. App'x 66 (2d Cir. 2012)(self-serving testimony solely from Plaintiff about what an unnamed employee told [her] is hearsay and thus inadmissible).

The Court in Hill v. Bloomberg, L.P., No. 14-CV-9809 (CM) 2016 U.S. Dist. LEXIS 54114, *38-39 (S.D.N.Y. April 20, 2016)(internal citations omitted) aptly described this scenario: "[a] classic example of the faulty logic that plaintiffs often use in employment discrimination cases: "I am a member of a protected class; something bad happened to me at work; it must have happened because I am a member of that protected class." Plaintiff's failure to promote claims should be summarily dismissed.

10

**B.      THE APPLICABLE LAW GOVERNING TITLE VII RETALIATION CLAIMS**

The same faulty logic applies to Plaintiff's retaliation claims, which are predicated on an implausible and self-serving theory, with admittedly "no proof" (Pl Dep., Ex B at 226), that immediately following her September 2014 complaint against Brown, Brown conspired with Chan, Plaintiff's new supervisor, to retaliate against her and create a hostile work environment for her.  Retaliation claims under Title VII and 1981 are reviewed under the burden-shifting approach of McDonnell Douglas. *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  Under the first step of the *McDonnell Douglas* framework, "the plaintiff must adduce evidence sufficient to permit a rational trier of fact to find: 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Id.*

With regard to the third element, the U.S. Supreme Court has made clear that a plaintiff alleging retaliation "must show that a <u>reasonable</u> employee would have found a challenged action materially adverse . . . " *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)(emphasis added).  An "alleged adverse employment action must be viewed from the perspective of the reasonable employee, because [Title VII's] standard for judging harm must be objective' to avoid 'the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.'"  *Id.* at 68-69.  Preserving the principal that that [anti-discrimination laws] 'do not set forth a general civility code for the American workplace" (*id.* at 68), the court continued:

> We speak of material adversity because we believe it is important to separate significant from trivial harms. . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. . . . And normally petty slights, minor annoyances, and simple lack of good manners will not [suffice to establish material adversity].

With regard to the fourth element, a plausible inference of a causal connection can be drawn either "[i] indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or [ii] directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010), *citing Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Once Defendants have articulated legitimate, non-discriminatory reasons for each of its actions, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer" for his or her Title VII claim to survive. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). "The employee at all times bears the burden of persuasion to show a retaliatory motive." *Cox v. Onondaga County Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014).

## C.   PLAINTIFF'S RETALIATION CLAIMS FAIL FOR A NUMBER OF REASONS

The record contains no direct or indirect evidence suggesting that any of Plaintiff's assignments, MPRs or work memoranda were directed at dissuading her from making complaints of discrimination, rather than at ensuring that she complete her assignments and perform her job in a timely and accurate fashion, and that she comply with the TA's general work rules and policies. In fact, despite a number of instances in which Plaintiff missed deadlines on important projects, resisted assignments by her managers and was outright insubordinate, Plaintiff was *not* the subject of any formal discipline, reduction in pay or material responsibilities, and her managers made continual efforts to try to improve her performance and resolve personality conflicts *See Galabya v. New York City Bd. of Educ*, 202 F.3d 636, 640 (2d Cir. 2000).

12

i.   **Plaintiff's 2014 and 2015 Managerial Performance Reviews ("MPR") were not "materially adverse" as a matter of law, and Defendants otherwise have irrefutably legitimate, non-discriminatory reasons for each MPR Plaintiff received**

It is well established that Plaintiff's "[s]ubjective, personal disappointment" with performance reviews that do not materially affect her employment is "not sufficient to state an adverse action." *Klein v. N.Y. Univ.*, 786 F. Supp. 2d 830, 846 (S.D.N.Y. 2011).

**2014 Review:**

First, the 2014 review Plaintiff received in May 2015 would not have deterred a *reasonable* employee from complaining about discrimination. Plaintiff's 2014 review was an overall "Good", containing 5 "Goods" and 2 "Marginals". Ex FF. Brown's requested language, adopted by Chan, that "I will continue us to work with Jennifer to further develop her management skills, increase product knowledge of the overall projects in Comms and Elevator and Escalator Program area", cannot reasonably be construed to be retaliatory or deterrent in nature. Ex HH. *See Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07 Civ. 8676 (RJH), 2010 U.S. Dist. LEXIS 4246, *37-38 (S.D.N.Y. Jan. 15, 2010) ("A reasonable employee would not be dissuaded from filing a discrimination complaint merely because her supervisor gave her constructive employment-based criticism."); *see Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 739 Fed. Appx 23, 24, 2018 U.S. App. LEXIS 17139, *1 (2nd Cir. 2018) (lukewarm criticism at the end of an otherwise positive review would not "deter a reasonable employee from complaining"). Even assuming these comments or the "Marginal" ratings were forms of criticism, it is clear that "criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (internal quotations removed).

13

Second, Plaintiff cannot demonstrate a causal connection between her protected activity in

September 2014, and the 2014 MPR she received on May 20, 2015, 8 months later[2]. *See Garrett*

*v. Garden City Hotel, Inc.*, No. 05-CV-0962 (JFB)(AKT), 2007 U.S. Dist. LEXIS 31106, at *69-

71 (E.D.N.Y. Apr. 19, 2007) (gap of more than two months was too long to support an inference

of causal link)(collecting cases); *Cunningham v. Consol. Edison, Inc.*, No. CV-03-3522 (CPS),

2006 U.S. Dist. LEXIS 22482, at *55 (E.D.N.Y. Mar. 28, 2006) ("a passage of two months

between the protected activity and the adverse employment action seems to be the dividing

line")(collecting cases). Further, Plaintiff's admittedly unsupported testimony that Brown

conspired with Chan or encouraged him to "retaliate" against her by giving her "Marginal" ratings,

is seriously belied by the undisputed facts that: 1) this MPR was drafted by Chan (not Brown)

based on the input of Kaufman, who was responsible for supervising Plaintiff for most of 2014

and had issues with Plaintiff that pre-date her protected activity and 2) in reviewing Chan's draft,

Brown suggested that one or two "Marginal" ratings be changed to "Good", and suggested

comments clearly meant to further develop Plaintiff as a manager (Ex HH).

In addition, Plaintiff's allegation that she previously received more positive evaluations

from other supervisors does not support an inference of retaliation. *See Davies v. N.Y.C. Dep't of*

---

[2] Although Plaintiff apparently submitted a letter complaint to the EEOC on May 11, 2015 (amended on May 27, 2015), TA records show that it was not in receipt of a copy of those complaints. As such, Plaintiff's argument to this Court (Docket No. 45) that such complaint "marked the beginning of the hostile work environment" is disingenuous and misleading, particularly since Plaintiff had been complaining to EEO that the MPR and other actions were in retaliation for her September 2014 Complaint and stated the same in her EEOC complaint. Regardless, Chan and Brown were not informed about any external complaint when they administered this review. To the extent the TA did receive a one-page "Notice of Charge of Discrimination" with "No action required" dated May 18, 2015 (despite the absence of such record on file), Chan had drafted his MPR prior to that date, by at least May 15, 2015 (Ex GG). *See Berry v. Empire Homes Servs. LLC*, No. CV-06-2354 (DGT) 2010 U.S. Dist. LEXIS 25363, *36-40 (E.D.N.Y. 2010) (Retaliation claim failed where plaintiff claims he was terminated on August 18, 2004, a day after filing his first complaint with the NYSHR, but provided no evidence demonstrating that the company had received notice of the complaint at the time of his termination.). Regardless, unlike the *Berry* Plaintiff who was terminated, there was no "materially adverse action" here, but rather the receipt of an overall "Good" review.

*Educ.*, 563 Fed. Appx. 818, 820 (2d Cir. 2014) (the plaintiff "claims that for the past twenty years she has had a sterling performance record," but she "cannot use her past performance to shield her from two years of unsatisfactory performance evaluations"; affirming grant of summary judgment); *Johnson v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 314, 324 (E.D.N.Y. 2014) (stating, in the context of a discrimination claim, that "a change in performance reviews, without more, does not lead to an inference of [an unlawful] motive"; granting summary judgment).

Drawing such an inference is "even <u>less</u> permissible when a new supervisor is appointed, who is entitled to set his own standards and agenda . . . . even if those expectations are contrary to a prior manager's expectations." *Id. See Thornley v. Penton Publ'g Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) ("Whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge"). Thus, Plaintiff's own perception of her performance and her disagreements with Chan's evaluations should be largely irrelevant without affirmative evidence demonstrating Defendants intended to retaliate against her. Chan testified that he had no knowledge of Plaintiff's prior reviews at the time he prepared her 2014 MPR, and Plaintiff was actually rated better than other employees in Chan's group, including Analyst Andrew Zsoldos, who was ultimately terminated for his poor performance (Ex ZZ).

Lastly, Plaintiff alleged to EEO and the EEOC that the retaliation by the Defendants began immediately following her September complaint and upon Chan's appointment, though Plaintiff did not file a complaint against Chan, or notify him that she was going to make a complaint against him, until June 4, 2015 (Ex B, 162), and Chan was not informed about the complaint against *Brown* until the instant lawsuit. *See, e.g., Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (finding "no rational juror" could conclude that alleged assault against prisoner by a corrections officer was in

retaliation for a prior complaint that did not name the corrections officer or involve an incident in which he supposedly participated).  Her retaliation theory is speculative and incorrect.

**2015 Review**:      Plaintiff's 2015 MPR, received on April 1, 2016 was also an overall "Good", with three "Marginals" in the areas of "Team and Interpersonal skills", "Problem Solving and Decision Making" and "Organizing and Planning Skills", and, for the same reasons stated above, would not deter a *reasonable* employee from complaining.  Further, this review was administered more than one year after Plaintiff's internal complaint and external complaints, suggesting no temporal proximity whatsoever.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (a lapse of 20 months "suggests, by itself, no causality at all").  Chan provided legitimate, non-discriminatory reasons for this review, which is the fact that Plaintiff was not processing her work in a timely and accurate manner, had missed two deadlines on a project that had already taken Plaintiff nearly seven months to complete (the OBI assignment), and because Plaintiff had to attend a Respectful Workplace course as a result of instances in which Chan felt that Plaintiff was being disrespectful.  *See, e.g.*, Ex D at 157-159.

**2016 Review**:      Plaintiff's 2016 review was administered in February 2017, and she received an overall "Needs improvement" review.  She received this MPR years after her protected activity, and the review was legitimately based on Plaintiff's continued failure (or perceived refusal) to handle her assignments in a timely and thorough manner, along with her unprofessional behavior towards Chan, including repeatedly accusing him as "harassing" her for what were clearly work-related requests and follow ups.[3]      Further, Plaintiff's belief that Brown sought to

---

[3] To the extent Plaintiff alleges that her general accusations that Chan was "harassing" her or being "disrespectful" constituted protected activity under Title VII, Defendants argue that this was not protected activity.  In order for her actions to constitute protected activity and thereby satisfy the first two elements of her prima facie claim, Plaintiff must show that her employer "understood, or could reasonably have understood, that [her] opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).  Plaintiff's general requests for a transfer out

"dissuade" her from engaging in protected activity is seriously undermined by the fact that in mid-2016, upon learning about the accusations against Chan by Plaintiff, Brown appealed to EEO and Labor Relation to help guide her with these issues, and thereafter alerted Plaintiff of her rights under the TA's EEO and other policies. *See* May 10, 2016 e-mail, Ex QQ.

**2017 Review**:  In February 2018, Plaintiff received another overall "Needs Improvement" for the year 2017 (Ex UU).  There is no dispute that this review came long after Plaintiff's protected activity, repudiating any notion of a causal connection here.  *See Clark Cty.* 532 U.S. at 273–74. In any event, this review was based on Plaintiff's lack of progress on long-standing work assignments (e.g., the Communications Strategy, assigned in August 2016), and her continued insubordinate behavior towards Chan, which culminated in an outburst in front of other employees. Moreover, her 2016 and 2017 reviews could hardly be used as evidence to show retaliatory animus, since Plaintiff was eligible to and did receive two GWI's in the two years immediately following her complaint of discrimination (2015-2016) and her salary increased from $104,733 to $108,965.

**In sum**,    Plaintiff's reliance on her prior MPRs, and/or her subjective disagreement with her annual performance reviews, are insufficient bases to establish inferences of retaliation and/or to establish sufficient evidence of pretext, nor can she rely on a temporal proximity argument to sustain such claims. *See Davis v. Oyster Bay-East*, 03-CV-1372, 2006 U.S. Dist. LEXIS 82914, at *42-46 (E.D.N.Y. Mar. 9, 2006) (Feuerstein, J.), *aff'd*, 220 F. App'x 59 (2nd Cir. 2007).

---

of her unit, or repeated statements that Chan's work-related e-mails and tone was "harassment", cannot be reasonably construed as voicing opposition to discriminatory conduct, rather than voicing complaints about garden-variety slights regarding her performance and the terms of her employment. *See Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch.*, LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."); *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528, 2014 U.S. Dist. LEXIS 134789, 2014 WL 4773975, at *20 (E.D.N.Y. Sept. 24, 2014) ("[W]here an employee claims gender-based discrimination, the employee's informal complaints to management must be gender-based, and not a general complaint about mistreatment by a supervisor or co-worker.")

**ii.**     **Plaintiff's dissatisfaction with her work assignments and Chan's work-related criticisms, her disagreement about his staffing decisions in his unit, and her complaints about Division-wide rules and policies as applicable to her, do not amount to actionable claims of retaliation, and Defendants otherwise articulated non-retaliatory, business-related reasons for any of its decisions and policies.**

The TA has a legitimate interest in requiring that those who do work on its behalf adhere to deadlines, provide accurate information, and follow basic work rules governing issues such as vacation leave and seniority. These are widespread, common sense rules not unique to Plaintiff. Plaintiff acknowledged these rules in her deposition (*see, e.g.*, Ex B at 90:3-10, acknowledging seniority regarding office assignments and why DiLorenzo replaced her, and Ex B at 61:13-20 acknowledging Brown's vacation policy in Capital Programs requiring that one Director be present at all times in a particular area, and *see*, Ex YY, Brown's schedule for all employees concerning lunchtime coverage).

Plaintiff's chief complaints about her onerous work assignments and lack of support are wholly unavailing. In fact, Plaintiff continually contradicts herself, on the one hand complaining that she was not offered participation in high level projects and that she was treated like an Analyst rather than a high level Director, and on the other hand, complaining that the more visible projects she was assigned, such as leading a task force to revamp the OBI statement, and developing a Communications Strategy for Capital Programs, were too time-consuming or technical for her to complete on time or even altogether, despite being given 6-8 month deadlines (*id.* at 186), and admittedly, no deadlines on compiling a Training Manual, which she claims took her 8-9 months, (*id.* at 208). The bottom line is, completing the tasks assigned to her by management were part of her job. *See Brown v. Snow*, No. 02 Civ. 7985 (GEL), 2006 U.S. Dist. LEXIS 10251 (S.D.N.Y. Mar. 13, 2006) ("[S]ubjective dissatisfaction with assignments does not constitute adverse employment action.") *aff'd sub nom. Brown v. Paulson*, 236 F. App'x 654 (2d Cir. 2007) (summary order); *see also*, *Martin v. MTA Bridges & Tunnels*, 610 F.Supp.2d 238, 254 (S.D.N.Y.

2009).    Further, and as Plaintiff well knows, everyone on Brown's staff has multiple projects at one time and performs "Analyst" work and work outside their basic duties, and Plaintiff otherwise said she did not know what others in the Division were assigned (Pl. Dep. Ex B at 212:17-23).

Plaintiff also fully contradicted her claim that she was "denied support staff" at her deposition, by repeatedly admitting that the Analysts in Chan's group have assisted her despite not being her "direct reports" and that she refused additional intern support offered by Chan.  Chan's decision to "flatten" his organization and have new hires report directly to him was a legitimate business judgment (*see Byrnie* 43 F.3d at 103), based in part on Plaintiff's effective refusal to acknowledge him as her supervisor and failure to keep him apprised of important information. This is the structure Chan deemed necessary in order for his unit to yield the best productivity in a time when Capital Programs has undisputedly been under immense internal and public scrutiny.

Chan was repeatedly interrogated at his deposition about correcting mistakes in the documents Plaintiff submitted to him (*see, e.g.*, D at 214-221).   However, holding Plaintiff accountable for typos, accurate information, and deadlines is self-evidently legitimate and business-related.   That Brown removed Plaintiff as her direct point of contact during Chan's absences cannot be reasonably construed as "materially adverse" as she was not entitled to responsibility. *See Galabya*, 202 F.3d at 640 (Changes in assignments or responsibilities that do not "radical[ly] change" the nature of work are not typically adverse employment actions). Regardless, Plaintiff carried out this responsibility for months following her September 2014 complaint, until an incident in around July 2015 wherein Brown testified she could effectively no longer trust Plaintiff to come to her directly with work-related information and it was affecting her ability to do her job (Ex C 312-314).   Again, it is not for a Court or jury to second guess legitimate business judgments such as these.  Similarly, Plaintiff's claims that she was, *e.g.*, "excluded" from

meetings or asked to provide weekly progress reports are the types of allegations that have been routinely rejected by this Circuit. *Chan v. NYU Downtown Hosp.*, No. 03 Civ. 3003 (RMB), 2006 U.S. Dist. LEXIS 98887, *24-27-9 (S.D.N.Y. Feb. 14, 2006) (rejecting claim that exclusion from "important meetings" and being "ostracized" constituted adverse employment action in Title VII retaliation case); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (claims of, *inter alia*, excessive scrutiny from supervisors cannot form basis of retaliation claim); *See, e.g., Mitchell v. Metro. Transit. Auth. Capital Constr. Corp.*, 2018 U.S. Dist. LEXIS 119223, *38-40 (S.D.N.Y. 2018)( allegations that, *inter alia*, manager forbade plaintiff from working with interns and demanded that she inform him of her daily work plan were not materially adverse).

iii.   **The memoranda documenting Plaintiff's work progress were not "materially adverse", and the 2017 Letter of Reinstruction she received amounted to nothing other than a warning; Defendants otherwise had legitimate, non-discriminatory reasons for these actions, including Plaintiff's progressively poor work performance and insubordinate behavior towards Chan**

While Plaintiff received memoranda regarding work performance issues, these memoranda, and the one re-instruction – warning Plaintiff about discipline -- which she received in 2017, amounted to nothing other than warnings.  The Second Circuit has clearly held that oral and written warnings do not amount to materially adverse conduct in light of its reasoning in *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), finding "[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action." *See Lucenti v. Potter*, 432 F. Supp. 2d 347, 363-364 (S.D.N.Y. 2000), *citing, Stembridge v. City of New York*, 88 F. Supp. 2d 276 (S.D.N.Y. 2000) (no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action"); *Castro v. New York City Bd. of Educ. Personnel*, 1998 U.S. Dist. LEXIS 2863, No. 96 Civ. 6314 (MBM)(S.D.N.Y. Mar. 12,

20

1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions."); *see also Tepperwien*, 663 F.3d at 570 (holding that a "counseling memo" containing mild criticism was not an adverse employment action in part because it "did not place [the plaintiff] in an active disciplinary process"). Defendants have otherwise clearly articulated legitimate, non-discriminatory reasons for these memoranda, which are detailed in the memoranda and supported by records.

     **iv.**    **Brown's decision not to pick Plaintiff up in the permanent civil service title of "Administrative Staff Analyst" in her group was not "materially adverse", was completely unrelated to Plaintiff's protected activity, and was otherwise irrefutably legitimate and non-discriminatory**

Brown's decision to decline permanent status for Plaintiff in the "Administrative Staff Analyst" title in her group was not "materially adverse". Plaintiff continued to perform the same job, with the same salary and benefits, before and after this decision. Regardless, Brown testified that she made this decision based on Plaintiff's evaluations, which were not at the expected level, and because she viewed it as an opportunity for Plaintiff to explore jobs in other groups since she had expressed unhappiness being in Brown's group (336). This decision was made years after Plaintiff filed her complaint against Brown, demonstrating no causal connection whatsoever to her protected activity. *See Clark*, 532 U.S. 268, 273–74.

     **v.**    **Plaintiff's complaints about Chan's purportedly demeaning "tone", work-related e-mails and criticisms, communication and management style do not amount to actionable claims and he has expressed the same high expectations to all his staff**

Insofar as Plaintiff's claims of retaliation rely on Chan's harsh tones or belittling statements, these allegations are simply not actionable as a matter of law. *See, e.g., Leehim v. New York City Dep't of Educ.*, No. 17 Civ. 3838 (PAE), 2017 U.S. Dist. LEXIS 192747, *11 (S.D.N.Y. Nov. 21, 2017) ("[Plaintiff] has alleged what may have been rude and intemperate conduct, but

Title VII provides no remedy for such conduct"); *Burlington*, 548 U.S. at 68 ("[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable," *quoting* 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 669 (3d ed. 1996)); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-CV-2728 (LTS)(DFE), 2008 U.S. Dist. LEXIS 41454, at *40 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [supervisor] publicly yelled at [plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."); *see Coffed v. Xerox Corp.*, No. 07-CV-6114 CJS, 2009 U.S. Dist. LEXIS 84014, at *36-37 (W.D.N.Y. 2009)(finding no adverse action where supervisors avoided plaintiff following a discrimination complaint).

**Context Matters**: As this Court stated in *Kellman*, the context of a particular case is important.  Plaintiff stated in her deposition that the PMA area of Capital Programs had become "dysfunctional" (p. 339).  However, despite Plaintiff's accusations that Chan "harassed" her or subjected her to a hostile work environment for assigning her work and holding her accountable for that work, and despite Plaintiff's fervent disagreement with Brown's hiring decisions, her performance evaluations, and Chan's management style, Plaintiff has not produced and cannot produce any evidence – direct or indirect – of retaliatory or discriminatory animus or pretext for retaliation. *See McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 216 (2nd Cir. 20016)(noting that, "[i]n a discrimination case," the law is "decidedly not interested in the truth of the allegations against plaintiff" but is instead "interested in what 'motivated the employer").  Plaintiff should not be entitled to a trial against her managers "based on pure speculation, no matter how earnestly held." *Ali v. Mount Sinai Hosp.*, No. 92 Civ. 6129 (JGK) NG), 1996 U.S. Dist. LEXIS 8079, at *22-23 (S.D.N.Y. Jun. 12, 1996); *see Alston v. N.Y. City Transit Auth.*, 14 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1998) (awarding employer judgment notwithstanding a jury verdict where employee

failed to demonstrate as a matter of law that its proffered reasons for its actions "were pretexts for retaliation" and emphasizing "'a fact-finder need not, and indeed should not evaluate whether a defendant's stated purpose is unwise or unreasonable") (*quoting DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 170-71 (2d Cir. 1993)).

## D.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS

In the absence of any facts whatsoever in the record from which to infer a discriminatory or retaliatory animus, Plaintiff's claims of hostile work environment fail on their face.[4] *See Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002); *see, e.g., Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250-51 (S.D.N.Y. 2000)(Title VII "does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors . . . [Plaintiff] must produce evidence that she was discriminated against because of her [membership in a protected class]", or in this case, engagement in protected activity). *See Benjamin v. Metro. Transp. Auth.*, No. 07-cv-3561 (DAB), 2012 U.S. Dist. LEXIS 110680, *35, *quoting, Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) ("[M]any bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.")

Not-withstanding, "[t]o establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment." *Villar v. City of N.Y.*,

---

[4] Plaintiff has not alleged any facts in her complaint, nor has she alleged in her deposition or interrogatory responses, or provided any evidence, that any of the purported "harassment" or alleged "adverse" actions following her complaints had anything to with her race, gender, or age. To the extent Plaintiff is still pursuing such claims, they should be summarily dismissed.

135 F. Supp. 3d 105, 137 (S.D.N.Y. 2015) *quoting*, *Rasco v. BT Radianz*, No. 05 Civ. 7147, 2009 U.S. Dist. LEXIS 21540, at *47 (S.D.N.Y. Mar. 17, 2009).

Plaintiff has not provided any evidence of intimidation, ridicule, insult, or hostility concerning her protected activity, but merely complains about inferior performance reviews, work-related criticisms, and harsh and demeaning tones by a manager – these are the types of claims this Circuit have consistently rejected. "Allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim."" *Lucenti v. Potter*, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006); *Anderson v. New York*, 614 F. Supp. 2d 404, 424 (S.D.N.Y. 2009, *aff'd sub nom. Anderson v. Cahi*ll, 417 F. App'x 92 (2d Cir. 2011); *see also Littlejohn*, 795 F.3d at 321 (allegations that a supervisor made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, and wrongfully reprimanded plaintiff, *inter alia*, did not state a claim for hostile work environment); *See Villar*, 135 F. Supp. 3d (plaintiff's claims that she was, among other things, being denied supervisory responsibilities, reassigned her from a private office to the front desk, yelled at once, and had a lower evaluation neither sufficiently severe nor pervasive to alter the conditions of her employment nor extraordinarily severe or physically threatening).[5]    No reasonable juror could find that Plaintiff's allegations amounted to an unlawful hostile work environment.

### E.    PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §§ 1981 and 1983 MUST BE DISMISSED

Plaintiff's §1983 claims for disparate treatment, hostile work environment, retaliation, and a pattern and practice of discrimination clearly duplicate her discrimination claims under Title VII, and are not based on a distinct violation of a constitutional right; they otherwise fail for all the

---

[5] Worth noting is that despite the purportedly unbearable work environment and requests for a quick reassignment out of the Division, Plaintiff could barely recall at her deposition applying for more than one or two positions since filing her September 2014 complaint, and she will not apply for a lateral transfer (351-2).    *See, e.g., Field v. Tonawanda City School District*, 604 F. Supp. 2d 544, 567 (W.D.N.Y. 2009).

reasons stated above.  *Patterson v. County of Oneida, New York*, 375 F.3d 206, 224 (2d Cir. 2004) (*citing Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000).   Further, even assuming her claims alleged a violation of legal rights separate and distinct from her Title VII claim,  "when the defendant sued for discrimination under §1981 or § 1983 is a municipality . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226; *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).   Plaintiff has failed to allege or proffer any evidence that the TA had a custom or policy of discrimination because it allegedly acquiesced in or condoned unlawful discrimination, the record does not support these allegations.  Pl Dep at 202:1-6.    There is no basis whatsoever to find the Defendants individually liable under §§1981 and 1983 for all of the reasons detailed above. *See Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122 (2d Cir. 2004).

## CONCLUSION

For the foregoing reasons the Transit Authority's Motion for Summary Judgment should be granted in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for such other and further relief as this Court may deemed just and proper.

Dated:   Brooklyn, New York
         March 7, 2019

                                 Respectfully submitted
                                 **JAMES B. HENLY**
                                 Vice President & General Counsel, NYCT
                                 *Attorney for the Defendants*
                                 130 Livingston Street - Rm. 1212,
                                 Brooklyn, New York 11201
                                 (718) 694-3893
                                 By: ***/s/Mariel A. Thompson***
                                 **MARIEL A. THOMPSON**