<u>16 CV 9957 (DAB)</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
(Filed via ECF)

JENNIFER BERKELEY CARR,

Plaintiff,

-against-

THE NEW YORK CITY TRANSIT AUTHORITY,
MARVA BROWN
DAVID CHAN

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT PURSUANT TO F.R.C.P. 56**

*GREGORY G. SMITH*
*The Law Office of Gregory Smith*
*81 Prospect Street*
*Brookln, New York, 11201*
*Tel: 917-748-2623*

TABLE OF CONTENTS

Page

MOTION TO STRIKE ................................................................................................................1

PRELIMINARY STATEMENT............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................1

PROCEDURAL HISTORY .....................................................................................................8

SUMMARY JUDGMENT STANDARD ...................................................................................8

POINT I..................................................................................................................................10

PLAINTIFF STATES A CLAIM FOR RACE DISCRIMINATION PURSUANT TO TITLE VII  WITH REGARD
TO HER DENIAL OF THE PROMOTION TO SENIOR DIRECTOR, PROGRAM MANAGEMENT &
ANALYSIS  GIVEN TO DEFENDANT CHAN BY DEFENDANT BROWN AND PURSUANT TO 1983 FOR
BOTH  PROMOTIONAL DENIALS IN 2014 ............................................ ................................. 10

A.  PLAINTIFF'S FAILURE TO PROMOTE CLAIMS WITHSTAND
    SUMMARY JUDGMENT...........................................................................................11

B.  PLAINTIFF'S  §1981 AND §1983 CLAIMS SURVIVE SUMMARY
    JUDGMENT................................................................................................................15

    POINT 2......................................................................................................................18

    PLAINTIFF'S CLAIMS OF RETALIATION SURVIVE
    SUMMARY JUDGMENT...........................................................................................18

C.  PLAINTIFF'S PRIMA FACIE CASE OF RETALIATION .......................................................18

    1.  Protected Activity... ...........................................................................................18

    2.  Adverse Employment Action ............................................................................18

i

(a)   Plaintiff's Declining MPR Ratings Until Defendants' Rate
      Her With A Needs Improvement ("NI") Rating Causing Plaintiff
      Not To Be Eligible For A General Wage Increase ("GWI")
      In 2016 And Again In 2017..............................................................................19

(b)   Plaintiff's Civil Service Appointment was denied by Defendant Brown .................20

(c)   Defendants Creation of a Retaliatory Hostile Work Environment .........................20

      3.   CAUSATION AND KNOWLEDGE ...........................................................22

   D.   DEFENDANTS' NON-DISCRIMINATORY REASON.........................................23

   E.   PLAINTIFF'S EVIDENCE OF PRETEXT........................................................24

      CONCLUSION ..........................................................................................25

TABLE OF AUTHORITIES

Cases                                                                                    Page

*Burlington N. & Sante Fe Ry Co. v. White,* 548 U.S. 53 (2006)………………………….………...22

*Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93  (2d Cir.2001)………………………….15

*Carlton v. Mystic Transp., Inc*., 202 F.3d at 134 (2d Cir. 2000)………………………………...12

*Celotex Corp v. Catrett,* 477 U.S. 317 (1986) ……………………………………………….... 8

*Chambers v. TRM Copy Centers Corp*., 43 F.3d 29 (2d Cir. 1994)……………………………... 9

*Clark Cty. Sch. Dist. V. Breeden,* 532 U.S. 268 (2001)…………………………………………22

*Collazo v. Connecticut Dep't of Social Servs.,* 2017 WL 4169407(D. Conn. 2017)…………….22

*Cruz v. Coach Stores, Inc.,* 202 F.3d 560 (2d Cir. 2000)…………………………………………18

*Danzer v. Norden Sys., Inc*., 151 F.3d 50, 57 (2d Cir. 1998)……………………………………11

*Davis v. City Univ. of New York,* 1996 WL243256 (S.D.N.Y. 1996)…………………………...20

*Delaney v. Bank of Am. Corp.,* 766 F.3d 163 (2d Cir. 2014)……………………………………10

*Dister v. Continental Group Inc.,* 859 F. 2d 1108 (2d Cir. 1988). ………………………………9

*Ehrbar v. Forest Hills Hosp*., 131 F. Supp. 3d 5 (E.D.N.Y. 2015) ……………………………1..5

*Fairbrother v. Morrison,* 412 F.3d 39 (2d Cir. 2005)……………………………………………19

*Feingold v. New York,* 366 F.3d 138 (2d Cir. 2004) ………………………………….....…13,1,5

*Fields v. New York State Office of Mental Retardation and Developmental Disabilities,*
115 F.3d 116 (2nd Cir. 1997)…………………………………………………………………....11

*Flynn v. New York State Div. of Parole*, 620 F.Supp.2d 463 (S.D.N.Y. 2003)…………………..6

*Galabaya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)…………………………20

*Gordon v. NY City Bd. of Educ.,* 232 F.3d 111 (2d Cir. 2000)…………………………………22

*Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 101 (2d Cir. 2010)…………………………...9

*Gutierrez v. City of New York,* 756 F. Supp.2d 491 (S.D.N.Y. 2010)……………………………19

*Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010) ……………………………………………………17

*Hollander v. American Cyanamid Co.,* 895 F. 2d 80 (2d Cir. 1990)……………………………...9

*Holcomb v. Iona Coll.,* 521 F.3d 130, 143 (2d Cir. 2008)…………………………………….15

*Kellman v. Metro,* No. 243, 8 F.Supp.3d 351 (S.D.N.Y. 2014)……………………………….14

*Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 205 (2d Cir. 2006)……………..17

*Krishna v. Colgate Palmolive Co.,* 7 F3d 1 (2d Cir. 1993)…………………………………………9

*Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009)……………………………………17

*Hutchinson v. Proxmire,* 443 U.S. 111 (1979)………………………………………………………9

*Luciano v. Olsten Corp.,* 110 F.3d 210 (2d Cir. 1997)………….…………………………………12

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973)……………………………… ….8, 9,10,11, 17

*Owens v. N.Y. City Hous. Auth.,* 934 F.2d 405, 409 (2d Cir. 1991)………………………………14

*Pantane v. Clark,* 508 F.3d 106 (2d Cir. 2007)…………………………………………………...23

*Patterson v. McLean Credit Union,* 491 U.S. 164 (1989)………………………………………16

*Patterson v. Oneida,* 375 F.3d 206 (2d Cir. 2004)…………………………………………………10

*Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75,78-79 (1998)…………………………12

*Ramseur v. Chase Manhattan Bank,* 865 F 460  (2d Cir. 1989)…………………………………9

*Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000)………………………………24

*Sanders v. New York City Human Res. Admin.,* 361 F.3d 749 (2d Cir. 2004 )…………………19

*Scalfani v. P.C. Richard & Son,* 668 F. Supp.2d 423 (E.D.N.Y. 2009)…………………………21

*Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir. 1997) …………………………12

*Sumner v. US Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990)……………………………………18

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993)……………………….……...............17

*Terry v. Ashcroft,* 336 F.3d 128 (2d Cir. 2003) ……………………...………............14

*Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)………………………………11

*United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983) ………………9

*Univ. of Texas SW. Med. Ctr. v. Nasser,* 570 U.S. 338 (2013)…………………………………22

*Villar  v. City of N.Y.,* 135 F.Supp.3d 105 (S.D.N.Y. 2015)………………………………………21

*Zann Kwan v. Andalex Group LLC,* 737 F.3d 834 (2d Cir. 2013)……………………......…..22,24

*Zipes* v. *Trans World Airlines, Inc.,* 455 U. S. 385 (1982) ………………………………………6

### UNITED STATES CONSTITUTION

Fourteenth  Amendment..……………………………………………………………………………2

### STATUTES

ADEA 29 U.S.C. §621…………………………………………………………6, 10, 15, 16, 17

Title VII…………………………...…………………………………………1, 2, 6, 10, 15, 16, 17

42 U.S.C. § 1981  ..………………………………..……………………………2, 10, 15, 16

 42 U.S.C. § 1983  ..……………………………………………………………….…2, 15

 Federal Rules of Civil Procedure 56  …………………..……………………………………*passim*

**DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS SHOULD BE STRICKEN AS VIOLATING THE ACTUAL RULE, THIS COURT'S PRACTICE <u>RULES AND THE SPIRIT OF RULE 56.1</u>**

Rule 56.1 of the Local Rules of the United States District Courts for the Southern District of New York is clear in its requirement that numbered paragraphs contain a separate, short and concise statement. The Individual Practices of Judge Deborah A. Batts states explicitly that there must be only one factual assertion in each numbered paragraph  and each factual assertion must be followed by a citation to the portion of the evidentiary record relied upon .  The practice Rule of this Court also provides an example of what is expected.  It further states that Local Rule 56.1 Statements found not to be in compliance with these Rules shall be stricken by the Court. Defendants' Two Hundred Sixty Eight (268) numbered Rule 56.1 Statement is replete with violations of Rule 56.1 and the Judge's practice rule.  The violation is so flagrant that in too many instances, Defendants only quote a portion of a transcript[1] without making an independent factual statement and also have submitted lengthy transcript quotations as Rule 56.1 statements.[2] While Defendants have had at least a year to put together their Rule 56.1 Statement, Plaintiff had to use her limited motion response time and resources to respond to each of the 268 statements therein.  Defendants' Rule 56.1 Statement should be stricken in accordance with this Court's rules of practice and as a violation of good faith compliance with Rule 56.1. Plaintiff should be granted such other relief as this Court deems appropriate.

<u>**PRELIMINARY STATEMENT OF THE CASE**</u>
<u>FACTUAL BACKGROUND</u>

Plaintiff Jennifer Berkeley Carr ("Plaintiff") is an African American female and brings this action pursuant to the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. §621, et  seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., (Title VII)  and The Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1983, et seq. ("§1983")  for

---

[1] See, *e.g.* number 58 of Defendants' Statement of Material Facts.
[2] See, *e.g.*, Statement 67, a 17 line transcript quotation.

discrimination, hostile work environment, harassment and retaliation in the denial of her

Constitutional right to be treated equally pursuant to the Fourteenth Amendment of the United

States Constitution and for unlawful retaliation in violation of the above statutes. Plaintiff is an

African American female of Caribbean descent  who at the time of the discrimination alleged

was age 59[3], dark brown skin complexion employed by the New York City Transit Authority

("NYCTA" or "TA") as a Director (senior manager) in the Communications and Systems Unit in

the Capital Programs Division within the Department of Subways ("DOS"). Plaintiff was hired

by NYCTA in 2000 as a Manager in Budget and Administration, MetroCard Operation. In 2004,

when that department was disbanded Plaintiff was named Director, Capital Planning in Capital

Programs, Department of Subways Division.  In 2006 Plaintiff was promoted to Director,

Acceptance and Engineering Review, Department of Subways.  From 2012 until the present,

Plaintiff has the title of Director of Telecommunications and Systems, Capital Programs,

Department of Subways.  Plaintiff has a Bachelor of Arts degree in Economics from Brooklyn

College and a Master's in Public Administration degree from New York University.  See

Declaration of Jennifer Berkeley Carr ("Carr Decl.") at ¶¶ 1-3; Pl's Exh.44 at pp. PL000217-218.

　　　Plaintiff has always performed her job duties and responsibilities satisfactorily or better

and was given high ratings until after complaining of unfair treatment to Defendant Brown,

Defendant Brown's supervisor, Senior Vice President Leader ("SVP Leader"), to the NYCTA's

Equal Employment Opportunity ("TA EEO") Office and to the United States Equal Employment

Opportunity Commission ("EEOC").  Carr Decl. at ¶ 27.

　　　Plaintiff complained to SVP Leader, filed a TA EEO complaint and an EEOC Charge of

Discrimination because she was discriminatorily denied two (2) promotions by Defendant

Brown, acting on behalf of the NYCTA, who gave those promotions to younger, non-African

American males. She was further subjected to retaliation and a hostile work environment because

---

[3]In their Memorandum of Law Defendants misleadingly use current ages of Defendants when the discrimination
complained about occurred starting six (6) years ago.

of her age, race and gender by Defendants Marva Brown and David Chan. She was retaliated against by Defendants Marva Brown and David Chan for having made the above described complaints.

As background information regarding the hierarchal structure of Defendant TA, it assigns lettered managerial levels from "A" through "G" (not including executive levels) to show higher ranking in a unit. Under this structure, a "B" level supervisor is at a lower level than an "A" level supervisor and an A Level supervisor is lower than an Executive Level supervisor. Brown Tr. pp. 19-20. In 2004, when Plaintiff was first assigned to the Department of Subways, her supervisor was Naja Zarzour ("Zarzour"), a high "A" Level Senior Director in the Communications Unit. He consistently gave Plaintiff "Excellent" or "Good" performance evaluations with an overall rating of "Excellent". *See*, *e.g.,* Pl. Exh.12 at PL 000270. The duties of her assigned unit, the Capital Programs Division of DOS, is to manage the 5-year capital budget for the Department of Subways.  Specifically, this includes the coordination and development of the 20-year needs assessment, which leads to the 5-year capital plan.  Capital Programs is responsible for managing the development and allocation of capital funds which include reviewing and processing of capital budget modifications and procurement, staff summaries and project master plans, reviewing of budget estimates, performing long-range planning and analyses, resolving issues for design and construction managers and issuance of several reports, one of which is the quarterly Critical Issues Report. Capital Programs essentially is responsible for adequately insuring funding for the Subways Department and monitoring timelines and safety compliance for the funded assets of the DOS. As such, Plaintiff provides such monitoring for Deborah Chin's unit. Carr Decl. at ¶¶ 36-39. The Capital Programs Division is divided into program areas based on asset types such as Elevators and Escalators.  Capital Programs has the core function of tracking the useful life of all assets used in running the subway system in order to provide capital funding to replace the assets. Carr Decl. at ¶4.

Plaintiff's supervisor from the year 2004, Zarzour retired in 2010 and was not replaced. Between 2010 and 2014, Plaintiff was the employee responsible for running the Communications and Systems Program area formerly overseen by Zarzour. This work involved frequent interaction to ensure adequate capital funds with representatives from the Department of Capital Program Management (CPM) staff, including Engineers, Program Managers, Design and Construction managers. These managers are licensed engineers and architects and it is their responsibility to address the technical scopes associated with the design and construction of NYCTA's assets. Carr Decl. at ¶ 5. It is the role of Capital Programs to make certain that the funding is provided and to oversee timeline and safety compliance.  Carr Decl. at ¶6. It has been Plaintiff's job to ensure that all DOS' capital needs are addressed. Plaintiff oversees all facets of program development and management of communications and new technology and related projects within the Department of Subways. She negotiates and resolves issues, prioritizes requests from Subways' operating divisions based on emergency and safety needs, and negotiates funding levels with the Division of Capital Planning and Budget and the Department of Capital Program Management (CPM) for inclusion in the Capital Program.  Carr Decl. at ¶ 6.

After Zarzour resigned, Plaintiff reported to Donald Tsang, Sr. Director in the Stations Program area. Mr. Tsang thought highly of Plaintiff's work.  See Tsang Affidavit at ¶¶ 5-10.   In 2010 Defendant Marva Brown ("Defendant Brown") was Senior Director, Program Management & Analysis in the Department of Subway's Capital Programs Division. In 2011 Defendant Brown, was promoted to Vice President and Chief Officer in the Capital Programs Division, the position she continued to hold at all times relevant to this action. Exhibit 44 at TA 576.

When Donald Tsang left in 2011, Defendant Brown told Joan Newbold, an A Level Senior Director and Manager of the Fulton Street Infrastructure project that Plaintiff would be reporting to her. Newbold was located on a different floor and was in Infrastructure, not the Communications area where Plaintiff was assigned. Defendant Brown also told Plaintiff to move

into Donald Tsang's vacant office. Newbold communicated with Plaintiff regularly and allowed Plaintiff to continue to manage and handle the responsibilities of the Communications area. Carr Decl. at ¶ 10.

Indeed, on April 5, 2012,  when Defendant Brown functioned as the rating supervisor for Plaintiff (for the period of January 1, 2011 until December 31, 2011) she too gave Plaintiff an Overall Rating of Excellent. (Pl.Exh.12, at PL 000269).  Similar to this, Plaintiff's next assigned supervisor, Amy Kaufman, also gave Plaintiff an Overall Rating of Excellent for the January 1, 2013-Deember 31, 2013 time period.  Exh.12 at TA 1025. Kaufman was assigned to the Stations Program Area and not to Plaintiff's Communications Program area, Kaufman also did not have an office located physically in Plaintiff's area. Carr Decl. at ¶ 11.

Starting in 2011, because of the Zarzour and other vacancies in CPM, Plaintiff had additional responsibilities.  In 2011, Defendant Brown told Plaintiff her position would go through what TA calls a "re-haying" process (TA terminology referring to a "Hay Point Reevaluation").  Defendant Brown consolidated functions and reclassified Plaintiff's position because of her additional responsibilities and worker vacancies in her area.  (Exh. 41 at p. TA 1655). Defendant Brown re-hayed Plaintiff's position for an in-place promotion to a C Level Director without giving Plaintiff her requested higher title of Senior Director.  The re-haying process took approximately one year to complete with Plaintiff receiving a twelve (12% ) percent increase at the reclassified "C" Level where she remained at all times relevant to this lawsuit. Carr Decl. at ¶ 9; Pl.'s Exh. 41.

On or about September 13, 2012 the position of Senior Director, Program Management and Oversight, directly reporting to Defendant Brown was posted. The position's primary responsibility was "for managing and coordinating the planning and development of a Comprehensive Capital Program for Tunnel Lighting, Line Structures and Line Equipment." (Exh. 44 at PL 000219). Plaintiff was qualified for the position within her unit, having met all the

"Education and Experience" and "Desired Skills" stated in that posting. Plaintiff applied and was interviewed on October 9, 2013. Although Defendant Brown acknowledged that Plaintiff was qualified, she gave that promotion to Joseph DiLorenzo, a younger white male (age 50 at the time of the promotion) who was working as Director of Stations and Facility Programs. (Exh. 49 at TA 3616).   Carr Decl. at ¶12.[4]  On February 3, 2014 Defendant Brown informed Plaintiff that she would not get the promotion because "the position is not the right fit" for Plaintiff. She had Plaintiff vacate her then assigned office and move into a cubicle in April 2014 for DiLorenzo to occupy. Carr Decl. at ¶¶12 and 13.

In May 2014, Amy Kaufman, another Defendant Brown direct report, resigned from a "B" Level managerial position as the Senior Director, Program Management & Analysis within the Department of Subways, Division of Capital Programs. On June 9, 2014 the title Senior Director, Program Management & Analysis was posted.  According to the posting, the "Senior Director is part of a managerial team that is responsible for the overall coordination of the Department of Subways' (DOS) 5-year Capital Program and ensures that Subways receives adequate level of funding to rebuild its assets and infrastructure in the most cost effective manner possible. …"  Pl. Exh. 43 at PL 00046. Plaintiff met all of the stated "Education, Experience and Desired Skills.  She applied, was interviewed on July 30, 2014. Carr Decl. at ¶15.  The panel conducting the interviews was comprised of only three individuals: Defendant Brown, Deborah Chin from Department of Capital Program Management ("CPM") (a unit outside of Capital Programs) and a Human Resource representative, Jennifer Franceschini (present to oversee the regularity of the interviews being conducted). There was no members of Defendant Brown's staff

---

[4] This failure to promote is not actionable on the Title VII and ADEA claims because it is beyond the 300 day filing period of Plaintiff's EEOC complaint. It is provided as an earlier incident cited for context. *Flynn v. New York State Div. of Parole*, 620 F.Supp.2d 463 (S.D.N.Y. 2003). An employee may use a prior act as background evidence to support a timely Title VII claim. See *Zipes* v. *Trans World Airlines, Inc.,* 455 U. S. 385, 393.  It is actionable under § 1981's four year statute of limitations and Plaintiff presents the information as a claim under §1981.

or from the Department of Subways' operating divisions who work closely with the Communication Program Unit present to interview Plaintiff.  Carr Decl. at ¶15. Panelist Chin had a pre-interview bias against Plaintiff, and a conflict in their working relationship, but did not recuse herself from the panel. Carr Decl. at ¶¶  36-39,  45; Response to Rule 56.1 Statement #95.

Plaintiff was again denied a B Level promotion by Defendant Brown.  The position was given to a younger Asian male, Defendant David Chan (age 51 at the time) (Pl. Exh.49 at TA 3712). Defendant Chan was at a lower level than Plaintiff, came from a unit outside of Plaintiff's, but became Plaintiff's supervisor in October, 2014, on a part-time basis until December 1, 2014. Carr Decl. at ¶18.  Defendant Brown filed an official justification for this promotion with the TA and stated that "He will ensure that Subways receives an adequate level of funding to rebuild its assets and infrastructure in the most cost-effective manner."  Pl.'s Exh.46 at TA 3529. Ensuring adequate funding of Subway assets had been Plaintiff's on-going job, so contrary to what she stated in the filed justification, Defendant Brown told Plaintiff that Chan was selected because she wanted to take the unit in a different direction.  Carr Decl. at ¶¶6 and 17.  On August 21, 2014 Plaintiff met with Defendant Brown's supervisor S.V.P. Leader to express her unfair treatment complaint. Exh. 2 Pl's AC ¶29.  Defendant Brown was told of this meeting and told Plaintiff she should not have gone to her boss.  See Pl's Exh 2 (AC) at ¶30. S.V.P. Leader did not report the complaint to TA EEO and by doing so failed to follow the TA EEO protocol.  See, Response to Rule 56.1 Statement ¶125.

Not only was she discriminatorily denied promotions, thereafter Defendants Brown and Chan subjected Plaintiff to public humiliation, abusive and retaliatory conduct. This included: decreasing performance evaluation ratings, denial of her earned Civil Service protected appointment, increased assignments with unrealistic completion deadlines, harassing communications, denial of raises, denial of or threats to deny vacation requests, wrongly classifying medical time off as vacation time, employment isolation, public criticism, denial of

support staff.  Carr Decl.  at ¶¶19-35; Pl, Exh.s12,13,14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25,

26, 27, 28, 29, 30, 32, 36 and 48; Response to Rule 56.1 Statement ¶¶ 209, 214, 217, 229, 234,

237, 238, 239, 240, 244, 248, 252, 254, 259, 268; Affidavit of Laura Kopcznski.  She has had to

receive mental health care to address the harm caused by their actions.  See Pl's Exh. 39. Pl's Tr.

pp. 248-258. Plaintiff submits this Memorandum in opposition to Defendants' Federal Rule Civil

Procedure 56 Motion for Summary Judgment.

## **PROCEDURAL HISTORY**

This action was commenced when plaintiff filed her initial Complaint against defendants

on December 27, 2016.  Plaintiff filed an Amended Complaint on January 4, 2017. Defendants

filed an Answer to Amended Complaint on March 7, 2019.

## **SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); see also, *Celotex Corp v. Catrett,* 477 U.S. 317, 322-23 (1986).

Courts have given plaintiffs the benefit in employment discrimination cases by

recognizing that, because it is a state of mind, it is difficult to demonstrate defendant's

discriminatory intent.  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) the Supreme

Court recognized that because an employer's true intent is difficult to ascertain, the employee

"must be given a full and fair opportunity to demonstrate by competent evidence that the

presumptively valid reasons for his rejection were in fact a cover up for a racially discriminatory

decision."  *Id*., 411 U.S. at 805.  *McDonnell* also holds that because an employer's true intent is

difficult to ascertain, the employee "must be given a full and fair opportunity to demonstrate by

competent evidence that the presumptively valid reasons for his rejection were in fact a cover up

for a racially discriminatory decision."  *Id*., 411 U.S. at 805. Similarly, in *United States Postal*

*Service Board of Governors v. Aikens*, 460 U.S. 711, the Court stated "All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult… There will seldom be 'eyewitness' testimony as to the employer's mental processes." *Id*., 460 U.S. at 716 (1983).

"Also relevant to this inquiry is our recognition that employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a "smoking gun" such as a notation in an employee's personnel file, attesting to a discriminatory intent." *Hollander v. American Cyanamid Co.,* 895 F. 2d 80, 85 (2d Cir. 1990); *Dister v. Continental Group Inc.,* 859 F. 2d 1108, 1112 (2d Cir. 1988). A victim of discrimination is therefore usually constrained to rely on the cumulative weight of circumstantial evidence. *See Ramseur v. Chase Manhattan Bank,* 865 F 460, 464-65 (2d Cir. 1989); *Hollander,* 895 F 2d at 85; *cf. United States Postal Serv. Bd. Of Governors v. Aikens,* 460 U.S. 711, 716-17, 103 S.Ct. 1478, 1482-83, 75 L.Ed.2d 403 (1983).

Summary judgment is used "sparingly" and "seldom granted" in cases involving peculiarly intensive state of mind questions such as employment discrimination actions. See *Hutchinson v. Proxmire,* 443 U.S. 111 (1979). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Chambers v. TRM Copy Centers Corp*., 43 F.3d 29, 37 (2d Cir. 1994). In the instant case, the Defendants' intentions behind the contested actions is the issue and thereby makes summary judgment inappropriate. See, *Krishna v. Colgate Palmolive Co.,* 7 F3d 1, 16 (2d Cir. 1993). *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 101 (2d Cir. 2010) ("caution" needed in employment discrimination cases).

## **DISCUSSION:**

### **Point I**

-9-

**PLAINTIFF STATES A CLAIM FOR RACE DISCRIMINATION PURSUANT TO TITLE VII  WITH REGARD TO HER DENIAL OF THE PROMOTION TO SENIOR DIRECTOR, PROGRAM MANAGEMENT & ANALYSIS  GIVEN TO DEFENDANT CHAN BY DEFENDANT BROWN AND PURSUANT TO 1983 FOR BOTH  PROMOTIONAL DENIALS IN 2014**

Discrimination claims under Title VII and the ADEA are analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973*); See Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 167 (2d Cir. 2014) ("It is well established that the burden-shifting framework set forth by the Supreme Court in McDonnell . . . applies to claims brought under the ADEA. …Since the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 173, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), eliminating the mixed-motive analysis as to ADEA claims, 'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA' satisfies this burden by presenting facts, which 'taken in [his] favor, suffice to... [show that] a triable issue [exists] as to whether [his] age was a `but for' cause of [his] termination.'") (citations omitted).

The disparate treatment analytical framework developed under Title VII is equally applicable to proof of age discrimination under the ADEA and intentional discrimination under §1981. *Patterson v. Oneida,* 375 F.3d 206, 225-27 (2d Cir. 2004). Accordingly, *McDonnell Douglas* analytical framework applies in all three discriminatory claims herein, Title VII, ADEA and 42 U.S.C. §1981.

 The function of this framework is to allow the plaintiff to raise an inference of discriminatory intent indirectly. The plaintiff must establish a prima facie case of discrimination, the employer must then articulate a legitimate, nondiscriminatory reason for its actions and, in order to prevail, the plaintiff must establish that the employer's articulated reason was a pretext to mask unlawful discrimination. *McDonnell Douglas v. Green,* 411 U.S. 792 (1973).

"Since a plaintiff prevails by showing that discrimination was a motivating factor, it can invite the jury to ignore the defendant's proffered legitimate explanation and conclude that

discrimination was a motivating factor, whether or not the employer's proffered explanation was also in the employer's mind. *Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 121 (2nd Cir. 1997) (citations omitted).

## A.  PLAINTIFF'S FAILURE TO PROMOTE CLAIMS WITHSTAND SUMMARY JUDGMENT
(Responding to Defendant's III A)

In the instant case, Defendants argue dismissal because: (1) plaintiff cannot make out a prima facie case, (2) plaintiff does not argue that she was "more qualified," (3) same actor and (4) pattern and practice theory procedurally and substantively improper. Defendant's Memorandum of Law in Support of Defendants' Motion for Summary Judgment Pursuant to F.R.C.P. 56 ("Defendants' Memo") at pp.7-10.

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.  "[T] the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-254 (1981). A plaintiff's sworn testimony in a discrimination case is the type of affirmative evidence that can defeat summary judgment. See *Danzer v. Norden Sys., Inc*., 151 F.3d 50, 57 (2d Cir. 1998) ("There is nothing in [Federal Rule of Civil Procedure 56(c) to suggest that non-movants' affidavits alone cannot—as a matter of law— suffice to defend against a motion for summary judgment."). Plaintiff has made a prima facie case.

For all discrimination claims Plaintiff must show: (1) that she as within the protected group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of dis-crimination…. This burden is not a heavy one…" *Gorzynski v. JetBlue Airways Corp*, 596 F.3d

93, 106 (2010), citing, *Carlton v. Mystic Transp., Inc.*, 202 F.3d at 134 (2d Cir. 2000); *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 63 (2d Cir. 1997) citing *Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir. 1997).

Plaintiff has met the above described burden.  Plaintiff is an African American female over the age of 40. Carr Decl. at ¶1.;Exhibit 45 at TA 1693 and TA 1558 (providing applicant background information [in the disposition column for each the A categorization means that the applicant is "Qualified"]). She experienced an adverse employment action because she was denied promotions with their status and pay increases (Exhibit 45 at TA 1693 Exh. 46 at TA 3529), and the actions occurred under circumstances giving rise to an inference of discrimination.  The inference of discrimination rises from the fact that she qualified under the posted Job Responsibilities and Education and Experience descriptions for both promotions (Exh. 43 at PL 000219 and 000246); they were denied to her (even though she had more substantial experience in the positions' primary tasks) and each were given to younger, non-African American males, both from outside the areas to be supervised (Capital Programs: Management & Oversight and Management & Analysis), based upon a criteria told to Plaintiff by Defendant Brown after the promotional process ended and not even stated in Defendant Brown's subsequent written promotion justification. (See, e.g., Exh. 46 at TA 3529).

Defendants argue that Defendant Brown is in the same protected class as Plaintiff.  The Supreme Court and the Second Circuit have each held that such evidence does not create a conclusive presumption or eliminate the existence of an inference of discrimination. See *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75,78-79 (1998) ([W]e have rejected any conclusive presumption that an employer will not discriminate against members of his own race….[W]e hold today that nothing in Title VII necessarily bars a claim of discrimination… merely because the plaintiff and the defendant…. are of the same sex."); *compare*, *Feingold v. New York,* 366

F.3d 138, 155 (2d Cir. 2004) ("We also reject the district court's suggestion that an inference of

discrimination cannot be drawn because [plaintiff] was fired by [a member of his religion].")

Defendants' concluding argument that Plaintiff did not hear Defendant Brown make a

derogatory remark does not take away the fact that she has demonstrated a *prima facie* case. The

Second Circuit recognizes that sophisticated individuals are not likely to provide explicit

derogatory comments.  In *Ramseur v. Chase Manhattan Bank* the Second Circuit held that

"Thus, the absence of direct or explicit evidence that a challenged personnel action was

motivated by race is not fatal to a claim of race discrimination.  A showing that a proffered

justification is pretextual is itself sufficient to support an inference that the employer

intentionally discriminated… Further the plaintiff is not required to prove that the employer's

proffered reasons are false but only that they were not the only reasons and that race made a

difference…. .'"  *Ramseur v. Chase Manhattan Bank*, 865 F2d 460, 465 (2nd Cir. 1989)

(citations omitted).

Defendants reasons for the failure to promote are non-truthful and non-consistent and

demonstrate pretext.  As an example of the non-truthfulness, Defendant Brown untruthfully

testified to giving Plaintiff a second interview, when she did not.  See Response to Rule 56.1

Statement #50. An example of non-consistent reasons for the promotions is that she told Plaintiff

she was not getting the promotion given to DiLorenzo because the position was not the right fit

for her (Carr Decl. at ¶ 12), but stated in her deposition she was looking for a technical person

(Response to Rule 56.1 Statements ¶¶ 55 and 56). The pretext is also demonstrated by further

evidence. The panel did not ask a question regarding technology. See Response to Rule 56.1

Statement ¶ 99.  The panel was irregular in that it did not ask the same questions of all (see

Response to Rule 56.1 Statement ¶ 84) and Deborah Chin was on the panel even though she has

a bias against Plaintiff (Carr Decl. at ¶ 45) and an adverse official role as Plaintiff was a

compliance monitor for Chin's unit. (Carr Decl. at ¶¶ 36-39).  Plaintiff's detailed Declaration

states that she had been in the Communications Unit of the Division of Capital Programs since 2004. She has been the "go to" person with respect to all communications and related assets in the Capital Programs. When her supervisor Zarzour retired in 2010 she was responsible for running the Communications and Systems program area. Pl. Decl at ¶¶ 3 and 5. Plaintiff's experience for the promotions is supported by the Declarations of her prior supervisors Tsang and Newbold.

"'[T]o defeat summary judgment.... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry v. Ashcroft,* 336 F.3d 128, 137-138 (2d Cir. 2003) (citation omitted). The employer's reasons here are a pretext to hide Defendant Brown's true reasons– she wanted a person younger than Plaintiff, she wanted a male and she wanted a non-black person.

Defendants next argument for dismissal is that Plaintiff does not argue that she is more qualified. The second prong of a prima facie case of discrimination under the ADEA requires that the employee be qualified for the position at issue. The plaintiff need only show that he or she was minimally qualified for the position. See, *Owens v. N.Y. City Hous. Auth.,* 934 F.2d 405, 409 (2d Cir. 1991), <u>cert. denied,</u> 502 U.S. 964 (1991).The case relied upon for Defendants' statement requirement of better qualified, *Kellman v. Metro, No. 243*, is distinguishable because the Plaintiff in that case asserted the promotes qualifications were not listed in the posting when in fact they were. *Kellman v. Metro*, No. 243, 8 F.Supp3d 351 (S.D.N.Y. 2014)

Indeed, "an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision." *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir.2001).

Defendants next rely upon a prior re-haying of Plaintiff's level by Defendant Brown to reject a claim of discrimination ("same actor" inference). It is initially noted that re-haying is

done to recognize the work that an employee has been doing. Further, the non-discrimination

inference sought by Defendants is undermined by Plaintiff's complaints of discrimination. See,

*Feingold*, 366 F.3d at 155 ("[Plaintiff's] complaints of discrimination could be found to have

altered the circumstances of his employment."); *Carlton v. Mystic Transp., Inc*., 202 F.3d 129,

138 (2d Cir. 2000) (holding that the "inference alone cannot support summary judgment in this

case where circumstances could have changed over the course of time"). Lastly, Defendants

argue that Defendant Brown has promoted African American females over the age of 60,

similarly situated to Plaintiff. Defendants cannot get away from the fact that prior to Plaintiff's

complaint, Defendant Brown had no African American females over the age of 60 at a Senior

Director level reporting to her (See Exh.47 at TA 1689) neither does she at the present time.

Here, promotions were given after Plaintiff filed a discrimination complaint (see, e.g., Response

to Rule 56.1 Statement ¶ 108) and suggests that Defendant Brown was taking remedial action

after the fact.  *Ehrbar v. Forest Hills Hosp*., 131 F. Supp. 3d 5, 27 (E.D.N.Y. 2015) ("where a

replacement within the protected class follows a complaint of discrimination, such timing can

support rather than undermine an inference of discrimination."), See also,  *Holcomb v. Iona

Coll*., 521 F.3d 130, 143 (2d Cir. 2008).

### B.   PLAINTIFF'S  § 1981 AND § 1983 CLAIMS SURVIVE  SUMMARY JUDGMENT
(Responding to Defendant's III E)

The Civil Rights Act of 1866, 42 U.S.C. §1981(a) prohibits racial discrimination that

inhibits the "right to make and enforce contracts." The Civil Rights Act of 1991 clarified that

such a right includes "the making performance, modification and termination of contracts, and

the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."

Discriminatory promotion claims are actionable under §1981 where the promotion rises to the

level of an opportunity for a new and distinct relation between the employer and the employee.

*Patterson v. McLean Credit Union*, 491 U.S. 164, 185-86 (1989).

Section 1983, permits an action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States.

The undisputed evidence in this case is that Defendant Brown is a very high level employee of the Defendant TA. Her boss, SVP Leader was made aware of the discrimination and was indifferent to the complaints of Plaintiff. (Carr Decl. at ¶20; Response to Rule 56.1 Statement ¶125). Indeed, the policy makers knowledge is such that it can, if permitted to proceed to a jury trial, raise a question as to whether the policymakers' actions or inactions were negligence or whether they also meet the higher stricter "deliberate indifference" standard.

Plaintiff brings claims under Title VII, the ADEA and Section 1981. Title VII makes it an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals… race, sex." 42 U.S.C. §2000e 2(a)(1). Similarly, the ADEA prohibits workplace discrimination on the basis of age. 29 U.S.C. §§ 621(b), 623(a). Finally, Section 1981 prohibits employment discrimination on the basis of race in the making and enforcing of contracts. Section 1983 claims must be filed in court within three years of the alleged discriminatory act or are considered to be time barred. Section 1981 actions have a four year statute of limitations. See for e.g., *Gutierrez v. City of New York,* 756 F. Supp.2d 491, 501 (S.D.N.Y. 2010).

All three statutes "prohibit employers from retaliating against any employee because that person has opposed any practice made unlawful by [these statutes]." *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 205 (2d Cir. 2006) ("The ADEA contains a nearly identical provision prohibiting retaliation for complaining of employment discrimination on the basis of age." (29 U.S.C. §623(d)). All three statutes also follow a similar burden shifting framework in

-16-

analyzing retaliation claims. Accordingly, Plaintiff will conduct a single analysis of all three claims.

Discriminatory retaliation claims under Title VII, the ADEA, and §1981 are analyzed under the burden-shifting framework that initially arose in the Title VII context. *Gorzynsky v. Jetblue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010)("Retaliation claims under Title VII and the ADEA are also analyzed under the *McDonell Douglas* burden- shifting test. To establish a *prima facie* case of retaliation under Title VII, the plaintiff bears the initial burden to submit evidence that the employee (1) participated in a protected activity; (2) suffered an "adverse employment action"; and (3) that there was a causal connection between the employee engaging in protected activity and the alleged adverse employment action (4) whether the employer knew of the protected activity.

If a plaintiff satisfies this initial burden, "a presumption of retaliation arises." *Hicks v. Baines,* 593 F.3d 159, 164-65 (2d Cir. 2010) (citation omitted). The burden of production then shifts to the defendant, who must "articulate a legitimate non-retaliatory reason for the adverse employment action." *Id.* If so, "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed. 2d 407 (1993). The employee must then show "that retaliation was a substantial reason for the adverse employment action." *Hicks,* 593 F.3d at 165. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause [;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Id.* at 164-65 (*quoting Sumner v. US Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990)).

## POINT 2

**PLAINTIFF'S CLAIMS OF RETALIATION SURVIVE
SUMMARY JUDGMENT**

**C.       PLAINTIFF'S PRIMA FACIE CASE OF RETALIATION**

Plaintiff claims that there were three (3) acts of retaliatory discrimination: (1) Brown and Chans discriminatory reduction of her yearly Managerial Performance Reviews ("MPR's" from Excellent ("E") to Needs Improvement ("NI") over the course of three years or three yearly evaluation periods; (2) Defendant Brown's denial of Plaintiff's Civil Service Designation; (3) Defendants Brown and Chans' creation of a retaliatory hostile work environment for plaintiff. Defendants argue that Plaintiff has failed to establish a *prima facie* case of retaliatory discrimination. See Defendants brief at pages 13-14.

Plaintiff disagrees.

**1.       Protected Activity**

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000). In reading through defendants brief, they do not dispute that Plaintiff engaged in protected activity by filing internal and administrative discrimination complaints or this lawsuit. See Defendants memorandum of law at page 3 where they admit that Plaintiff filed both internal ("EEO") and administrative ("EEOC") complaints of discrimination.  All of Plaintiff's complaints of discrimination involve three protected categories: race, gender and age. Accordingly, Plaintiff has established that she did engage in protected activity.

**2.       Adverse Employment Action**

**(a)       Plaintiff's Declining MPR Ratings Until Defendants' Rate Her With A Needs Improvement ("NI") Rating Causing Plaintiff Not To Be Eligible For A General Wage ("GWI[5]") Increase In 2016 And Again In 2017.**

An adverse employment action is any action that causes the Plaintiff to "endure a materially adverse change in the terms and conditions of employment…[and a] materially adverse

---

[5] In the years prior to 2016 Plaintiff (because of her satisfactory performance evaluations always received the GWI when it was offered by the TA.

change is one that has an attendant negative result, a deprivation of a position or an opportunity."

*Gutierrez v. City of New York,* 756 F. Supp.2d 491, 506 (S.D.N.Y. 2010) (citations and internal

quotation marks omitted). Termination of employment or discharge from employment therefore

are [examples] of adverse employment actions. *Id.* Plaintiff maintains that her 2014, 2015 and

2016 and 2017 MPR ratings amount to a materially adverse employment action culminating in the

loss of a general wage increases for 2016 and 2017. The Second Circuit has routinely held that a

negative workplace evaluation does not per se amount to an adverse employment action.

See for e.g., *Fairbrother v. Morrison,* 412 F.3d 39, 57 (2d Cir. 2005) (holding that an

appraisal with an overall rating of unsatisfactory was not materially adverse as a legal matter); but

see *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 756 (2d Cir. 2004 ) (holding that

a negative job evaluation may constitute adverse employment action in certain circumstances but,

on its own, material adversity does not follow). In *Fairbrother*, the plaintiff received a

performance evaluation with an overall ranking of "unsatisfactory."  412 F.3d at 56. The next

year, the plaintiff received a [positive] evaluation. Accordingly, the court found that plaintiff

offered insufficient evidence to establish that the evaluations constitute an adverse employment

action by the Defendant. That is not the case here. Defendants' strategic plan in lowering

Plaintiff's evaluations from overall Excellent ("E") performance evaluations, in at least the four

prior years, to 2014. However, beginning in 2014, Brown and Chan colluded to rate Plaintiff with

two (2) marginal ratings and an overall rating of Good; to 2015 where Defendants gave Plaintiff

three (3) marginal ratings with an overall rating of Good; to 2016 where Defendants rated Plaintiff

with an overall Needs Improvement and rated Plaintiff again in 2017 with and overall rating of

Needs Improvement. Accordingly, in both years where Plaintiff received a NI rating she was

denied a general wage increase ("GWI") by her employer thereby, altering the terms and

conditions of her employment/compensation. See Pl's Rule 56.1 statement at ¶¶148-163.

**(b)    Plaintiff's Civil Service Appointment was Denied by Defendant Brown**

Plaintiff was requested by the TA to take a civil service examination in February 2015.

Plaintiff took the tests for "Administrative Manager" and "Administrative Staff Analyst" Plaintiff

passed both exams and became eligible for a permanent Civil Service title and added job

protection in one or both of these job titles. Brown denied Plaintiff the Civil Service designation

by not signing off on the civil service paperwork. Brown's denial constituted an adverse

employment action. "A Plaintiff sustains an adverse employment action if he or she endures a

materially adverse change in the terms and conditions of employment." *Galabaya v. N.Y. City Bd.*

*of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change is one that 'has an

attendant negative result, a deprivation of a position or an opportunity. *Davis v. City Univ. of New*

*York,* 1996 WL243256 at *8 (S.D.N.Y. 1996). When Brown was questioned about her decision to

decline Plaintiff's civil service designation she testified that it's her right to say "yes or no" to

permanent civil service status. Accordingly, Brown denied Plaintiff permanent civil service status.

Thus, Brown's refusal to appoint Plaintiff was an act of retaliation because it altered the terms and

conditions of Plaintiff's employment.  See Plaintiff's Rule 56.1 Statement at ¶¶143-147.

### (c)    Defendants Creation Of A Hostile Work Environment

Defendants created a retaliatory hostile work environment for Plaintiff. The first evidence

of that is when Defendants Brown and Chan rated Plaintiff's 2014 MPR with two (2) marginal

ratings, but rated Plaintiff with and overall "Good" performance. The hostile work environment

only got worse from there on out until the present time. For example, Defendants have gradually

decreased Plaintiff's yearly work performance evaluations from "Excellent" in 2013 to "Needs

Improvement" in 2016 and 2017. Defendants have given Plaintiff vastly increased work duties

and responsibilities in the form of "special projects" that are way beyond her core duties and

responsibilities as Director Communications. Defendants have given Plaintiff increased reporting

responsibilities on top of the all of the extra work that she is responsible for; further Defendants

have taken away Plaintiff's Analyst support, taken away her office, given her multiple

overlapping projects with time deadlines, denied her engineering support services, denied many of her vacation requests and/or threatened to take her vacation time, denied Plaintiff the privilege to sit in for Chan in his absence.

Furthermore, Chan has given Plaintiff daily emails with work assignments, some coming as early as 3:00 o'clock in the morning; Defendants emails and buckslips to Plaintiff have a tone that is rude and hostile, Chan has given Plaintiff a lunch time where she had none prior to his supervision of her. Defendants improperly used Plaintiff as a messenger to humiliate her. Plaintiff was unfairly given a letter of reinstruction and directed to attend Respectful Workplace classes. Plaintiff lost two pay raises as a result of the 2016 and 2017 MPR "NI" overall ratings.  Chan talks negatively about Plaintiff behind her back. Chan is critical of Plaintiff when talking to her in front of others. See Plaintiff's 56.1 Statement for e.g., at ¶¶ 179, 182, 184, 186, 188, 200, 203, 214, 217, 222-237, 248, 255, 262, 268' see also, Affidavits of Kopcznski, Jackson, Pearce and Weinzimmer.

Courts in the Second Circuit have recognized the creation of a hostile work environment as an adverse employment action. *See Villar v. City of N.Y.,* 135 F.Supp.3d 105, 137 (S.D.N.Y. 2015)(evaluating argument that plaintiff was subjected to retaliatory hostile work environment  at summary judgment stage); *Scalfani v. P.C. Richard & Son,* 668 F. Supp.2d 423, 439 (E.D.N.Y. 2009)(recognizing that "unchecked retaliatory coworker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that prong] of the retaliation *prima facie* case" (internal marks and quotations omitted).

"To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a Plaintiff must satisfy the same standard that governs hostile workplace claims…" *Collazo v. Connecticut Dep't of Social Servs.,* 2017 WL 4169407 at *7 (D. Conn. Sept. 20, 2017); *Burlington N. & Sante Fe Ry Co. v. White (Burlington Northern),* 548 U.S. 53, 64, 126 S. Ct. 2405, 165

L.Ed.2d 345 (2006). ("Thus, purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision [of Title VII], is not limited to discriminatory actions that affect the terms and conditions of employment." (citations omitted)). Title VII's "anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces and injury or harm." *Burlington Northern*, 548 U.S. at 67.

3.     **CAUSATION AND KOWLEDGE**

A plaintiff making a retaliation claim under §2000e 3(a) must establish that her protected activity was a but-for cause of the alleged adverse action by the employer. *Univ. of Texas SW. Med. Ctr. v. Nasser,* 570 U.S. 338, 133 S. Ct. 2517, 2534, 186 L.Ed.2d 503(2013). "But-for causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Group LLC,* 737 F.3d 834, 845-46 (2d Cir. 2013).

Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment,…or (2) through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. NY City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000)). The cases that accept mere temporal proximity between and employers knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close. *Clark Cty. Sch. Dist. V. Breeden,* 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

In the instant case, Plaintiff offers temporal proximity to establish that Chan had knowledge of Plaintiff's EEOC Charge of Discrimination that was filed on May 11, 2015 and mailed to the employer on May 18, 2015. Thereby, satisfying prongs 3 and 4 of Plaintiff's *prima facie* case against Defendants. Plaintiff received her MPR with two marginal ratings on May 20, 2015 that began the creation of Plaintiff's retaliatory hostile work environment claim. See

Plaintiff's Rule 56.1 Statement at ¶¶ 149-152. See also Carr Decl. at ¶23 and Exh. 16 (EEOC Charge of Discrimination). Defendants argue that Chan didn't know of the protected activity. This argument is undercut by his collusion with Brown to provide Plaintiff with two marginal ratings on her 2014 MPR. Combined with the fact that the EEOC sent out to the TA's General Counsel Eamon Foley Plaintiff's Notice of Charge of Discrimination on May 18, 2015 make it a jury question as to whether or not Chan knew of the protected activity. "Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." *Pantane v. Clark,* 508 F.3d 106, 115 (2d Cir. 2007).

Defendants also argue that Plaintiff's protected activity was not followed closely in time as regards Brown. However, Brown had direct knowledge of Plaintiff's internal EEO Complaint and showed her animus at the time by scolding Plaintiff, "I told you not to go to my boss." Emphasis added. Moreover, since Plaintiff filed her original EEO Complaint on September 23, 2014, Brown went to the TA EEO Office to be interviewed about a so called "anonymous complaint" that the EEO deemed came from Plaintiff without offering any proof of same. Indeed, Brown should have taken Plaintiff's complaint to the EEO office once she learned that Plaintiff had complained to SVP Leader. See Plaintiff's Rule 56.1 Statement ¶¶ 110-112, 118, 125, 127.

## D.   DEFENDANTS' NON-DISCRIMINATORY REASON

Plaintiff having articulated her *prima facie* case, Defendants must now come back with their legitimate non-discriminatory reason(s) for their retaliatory actions. As to Plaintiff's declining MPR argument, Defendants do not provide a non-discriminatory reason for their action apart from their prima facie case arguments of "not an adverse employment action" and "no causal connection" arguments. See pp.13-14 of their brief. Defendants apparently rely that Plaintiff cannot make out a *prima facie* case. As to Plaintiff's Civil Service denial Defendants

again rely that Plaintiff cannot make out her prima facie case as to "materially adverse" and no

"causal connection" arguments at page 23 of their brief.

**E.     PLAINTIFF'S EVIDENCE OF PRETEXT**

Defendants maintain that Plaintiff has offered neither direct nor circumstantial evidence to

show that she has met her initial burden of production, i.e. submitting a *prima facie* case. Plaintiff

argues that she has shown a sufficient causal nexus between her protected activity and Defendants

adverse actions against her by both direct (animus) and circumstantial (temporal proximity)

evidence. A plaintiff demonstrates pretext by showing that a retaliatory motive played a role in

causing the adverse employment action. *Hicks,* 593 F.3d at 164. "[R]ejection of the defendants'

proffered [non-discriminatory] reasons will permit the trier of fact to infer the ultimate fact of

intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 134, 120 S.

Ct.  2097, 147 L. Ed.2d 105 (2000). Evidence of pretext may include temporal proximity between

the protected activity and the adverse action plus additional evidence either showing retaliatory

animus or disproving the truth of the employer's legitimate reason for the adverse action. "[A]

plaintiff may rely on evidence comprising her prima facie case, including temporal proximity,

together with other evidence such as inconsistent employer explanations to defeat summary

judgment…" *Zann Kwan v. Adalex Grp. LLC,* 737 F.3d 834 at 837; *Summa v. Hofstra Univ.,* 798

F.3d  115, 129-30 (2d Cir. 2013) (finding plaintiff made a sufficient showing of pretext to survive

summary judgment where the record contained evidence supporting plaintiff's narrative and

disproving factual elements of the defendant's legitimate rational for its adverse action).

As discussed above, there is sufficient temporal proximity and animus directed at

Plaintiff to survive this summary judgment motion. Plaintiff shows pretext in the instant case by

pointing to Plaintiff's Rule 56.1 statements at ¶¶ 189, 191, 207-209, 238-240, 244, 250, 252, 254,

256, 259, 260, 261, 263, 264. Also see Carr Decl. at ¶¶16-17. Pretext is shown here among other

items that Brown attempted to appease Plaintiff by recommending her for the NYC Leadership

Institute which is a premier management leadership training program on the same day as she gave Plaintiff the bad news that she was not going to promote her and that she was taking Communications in a "different direction." Brown's statement is undercut and voided by her reprimand to Plaintiff that "I told you not to go to my boss" showing the animus Brown has toward Plaintiff for complaining to SVP Leader about not being promoted and wanting a transfer out of Capital Programs.  Brown contradicted her earlier testimony about giving Plaintiff a second interview for the DiLorenzo promotion when in fact she did not. See Decl. at ¶ 35, Rule 56.1 at ¶50-51.

Also when Brown called the EEO office in May 2016 seeking guidance regarding escalating issues between Plaintiff and Chan when she should have contacted the EEO Office back in August of 2014 when she learned that Plaintiff was dissatisfied with her lost promotion and wanted a transfer out of Capital Programs. See Rule 56.1 ¶ 189.

<u>**CONCLUSION**</u>

WHEREFORE, for all of the above stated reasons Plaintiff respectfully request that Defendants' motion for summary judgment be denied.

Brooklyn, New York
April 22, 2019

Respectfully submitted,

*\s\ Gregory Smith*
_____
Gregory G. Smith
Attorney for Plaintiff
