**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 -------------------------------------------------------------------X
**JENNIFER BERKELEY CARR,**

      *Plaintiff*,

   -against-

**NEW   YORK   CITY   TRANSIT   AUTHORITY,   MARVA**
**BROWN AND DAVID CHAN,**

      *Defendants*.

 -------------------------------------------------------------------X

DOCKET NO. 16-CV-09957

Hon. Deborah A. Batts

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P 56

**DAVID I. FARBER**
Vice President and General Counsel
**NEW YORK CITY TRANSIT AUTHORITY**
*Attorney for Defendants*
130 Livingston Street, Room 1212
Brooklyn, New York 11201
(718) 694-3893

**MARIEL A. THOMPSON**
*Executive Agency Counsel*

# TABLE OF CONTENTS

<u>Page</u>

**PRELIMINARY STATEMENT** ..............................................................................1

I.    **PLAINTIFF'S MEMORANDUM OF LAW SHOULD BE STRICKEN, HER MOTION TO STRIKE THE DEFENDANTS' 56.1 STATEMENT DENIED, AND HER RESPONSES WITHOUT CITATION TO ADMISSIBLE EVIDENCE SHOULD BE DEEMED ADMISSIONS OF THE STATED FACT** ......2

II.    **ARGUMENT** ..........................................................................................3

    A.    **Plaintiff's claims of race, age and gender discrimination are baseless and do not survive summary judgment under Title VII, the ADEA, or Sections 1981 and 1983** ................................................4

    B.    **Plaintiff's Retaliation Claims Do Not Survive Summary Judgment** ........................................................................7

        i.    **Plaintiff has failed to establish temporal proximity with respect to any purportedly "adverse employment action":** ..........................................................................7

        ii.    **Plaintiff has failed to allege disparate treatment and the evidence suggests the opposite** ...................................8

        iii.    **Plaintiff has utterly failed to show that Defendants' non-discriminatory legitimate reasons for its actions were false or pretext for discrimination or retaliation:** ...............9

        iv)    **Plaintiff's allegations are clearly insufficient to show hostile work environment** ...................................10

**CONCLUSION** .................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
    239 F.3d 456, 466 (2d Cir. 2001) ......................................................................4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1986) ..................................................................................5

*Carlton v. Mystic Transp., Inc*.,
    202 F.3d 129, 137-138 (2d Cir. 2000) ..............................................................4

*Hunter v. Police Athletic League, Inc.,*
    No. 09 Civ. 997 (DAB), 2011 U.S. Dist. LEXIS 31243,
    *20-25 (S.D.N.Y. March 23, 2011) ..................................................................7

*Rikhy v. AMC Comp. Corp*.,
    No. 01 Civ. 7007(WHP), 2003 U.S. Dist. LEXIS 4804,
    *2-3, 13-14 (S.D.N.Y. Mar. 28, 2003),
    *aff'd*, 95 F. App'x 388 (2d Cir. 2004) ..............................................................4

*Senno v. Elmsford Union Free Sch. Dist*.,
    812 F. Supp. 2d 454, 458 (S.D.N.Y. 2011)........................................................3

*Villar v. City of New York*,
    No. 09-cv-7400 (DAB), 135 F. Supp. 3d 105, 119-120 (S.D.N.Y.) ............................3, 10

*Woods Enlarged City Sch. Dist. of Newburgh*,
    473 F. Supp. 2d 498, 524 (S.D.N.Y. 2007) ......................................................7

**Statutes:**

Fed R. Civ. P. 56…….…………………………………………………………..…2, 3

Local Civil Rule 56.1…………………………………………………………………3

**PRELIMINARY STATEMENT**

In response to Defendants' motion for summary judgment, Plaintiff submits her own duplicative declaration, and the largely inadmissible and otherwise immaterial declarations of former employees.   These declarations merely contain self-serving and self-aggrandizing statements, which utterly fail to support any of Plaintiff's claims in this case or create a genuine material issue of fact for a trial.

First, and as detailed below, there is not a scintilla of evidence in this record to support an inference of age, race and/or gender discrimination against the Defendants, let alone refute the Defendants' legitimate, non-discriminatory reasons for selecting two highly qualified candidates and longer-standing TA employees Joseph DiLorenzo (age 54) and David Chan (age 55) for two positions in the TA's Department of Capital Programs, Division of Subways.  Vice President and Chief Officer, Capital Programs, Subways, Marva Brown (59 year-old African-American female) selected these candidates based on, among other things, their resumes, experience, technical backgrounds and with input from two respective interview panels.  Plaintiff does not dispute either selected candidate's qualifications for the positions, nor does she offer any evidence of discriminatory animus; rather, she continues to emphasize her own qualifications, seeks to undermine the promotion and 12% raise Defendant Brown obtained for her two years prior to these decisions (see Plaintiff's Response to 56.1 Statement ["Pl Resp."] ¶24-27]), and proffers baseless, self-serving pattern and practice theories that are immaterial to and improperly raised in this case.

Second, there is insufficient evidence from which a reasonable juror could conclude that retaliation was the "but-for" cause of any job action taken with respect to Plaintiff.  The undisputed facts demonstrate that consummate with overall "Good" reviews by Chan for the years 2014 and 2015 immediately following her internal complaint of discrimination in September 2014 and external complaints received in October 2015 (see Defendants' 56.1 Statement, Ex's FF, OO, F,

H), Plaintiff received general wage increases ("GWI") in 2015 and 2016 (*see* Ex's L, NN).[1]  The facts show that to the extent there were, as Plaintiff argues, "adverse employment" actions taken against her, such as, *arguendo*, her receipt of a "Needs Improvement" review in April 2017 (Ex SS), and Brown's decision in 2017 not to recommend Plaintiff for permanent civil service status in the title of "Administrative Staff Analyst", such actions came *years* after Defendants became aware that Plaintiff engaged in protected activity, repudiating any inference of retaliatory animus. Plaintiff has otherwise failed to allege any facts or provide evidence suggesting that Defendants' legitimate, non-discriminatory reasons for any of its actions over the course of three years, including, among other things, Plaintiff's failure to timely complete or make meaningful progress on important projects, her refusal to keep her managers apprised of information, and her at times disrespectful conduct, were mere pretexts for discrimination or retaliation, nor has she alleged or proffered any evidence of disparate treatment.

In sum, Plaintiff is asking this Court to second guess Brown's clearly legitimate, non-discriminatory business judgments, and to conclude that Plaintiff was in fact was the better candidate for the job for which Chan was selected – this is emphatically not the role of the courts. Further, even assuming, *arguendo*, that Chan is a challenging and demanding manager, as Plaintiff appears to be trying to establish, it has been widely held that it is not the role of the courts, for good reason, to enforce general civility codes in the workplace or to punish difficult bosses.  This is precisely the type of case wherein summary judgment is appropriate.

## I.
## PLAINTIFF'S MEMORANDUM OF LAW SHOULD BE STRICKEN, HER MOTION TO STRIKE THE DEFENDANTS' 56.1 STATEMENT DENIED, AND HER RESPONSES WITHOUT CITATION TO ADMISSIBLE EVIDENCE SHOULD BE DEEMED ADMISSIONS

---

[1] Plaintiff erroneously claims that she did not receive a GWI in 2016 (Pl. Mem. pp. 18-19), when in fact the records establish conclusively that she did. *See* Ex "L": on July 1, 2016, her salary went from $106,828 to $108,965, as a result of a General Wage Increase. *See* Pl. Resp. ¶188 – citing to no admissible evidence disputing these facts.

Plaintiff untimely filed her memorandum of law on April 23, 2019, due on April 22, 2019 pursuant to this Court's order dated January 23, 2019. She did not ask for an extension, provides no explanation for the late reply, and it should be stricken accordingly. Regardless, in a failed attempt to detract from the lack of merit to her case, Plaintiff spends the first page of her memorandum requesting that this Court strike Defendants' Rule 56.1 Statement. This request should be denied. Defendants' 56.1 Statement contains separate, short and concise statements of fact, with citations to admissible evidence as the basis for each statement and factual assertion in accordance with Rule 56.1(a) and this Court's rules. It is Plaintiff's protracted responses that violate the rules, as they improperly contain legal argument, inadmissible hearsay, and often fail to cite to any admissible evidence in violation of Local Rule 56.1(c)-(e). " Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials" and such responses by Plaintiff (*see*, *e.g.*, Pl. Resp. *e.g.*, ¶¶4, 22, 24, 25, 26 27, 27, 28, 30, 31, 33, 36, 48, 49, 50, 52, 53, 54, 55, 57, 62, 63, 67, 68, etc.) should be "deemed admissions of the stated fact." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 (S.D.N.Y. 2011). Further, the declarations submitted by Plaintiff improperly contain speculation, innuendo, inadmissible hearsay and are otherwise unsupported by evidence in the record in violation of Fed. R. Civ. P. 56(c)(4) and Local Rule 56.1(d) and should be disregarded.

## II.
## <u>ARGUMENT</u>

Without any direct or indirect evidence of discrimination or retaliation in this case, Plaintiff argues that she should be given the "benefit of the doubt" in light of case law denoting that it is often difficult to ascertain a Defendant's discriminatory intent (Pl. Mem. pp. 8-9). However, as this Court has repeatedly stated, summary judgment is the time to "put up or shut up" (*Villar v. City of New York*, No. 09-cv-7400 (DAB), 135 F. Supp. 3d 105, 119-120 (S.D.N.Y.)(internal citations omitted), and "[it] is now beyond cavil that summary judgment may be appropriate even

in the fact-intensive context of discrimination cases," *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### A. Plaintiff's claims of race, age and gender discrimination are baseless and do not survive summary judgment under Title VII, the ADEA, or Sections 1981 and 1983

<u>Plaintiff fails to make out a prima facie case</u>: In support of her contention that she has sustained her burden to establish prima facie cases of age, race and gender discrimination with respect to Brown's 2014 promotional decisions[2], Plaintiff emphasizes that "the burden is not onerous" (Pl. Mem. at 11-12), and says she has shown that she was qualified for the two positions at issue and that the two individuals Brown selected were slightly younger, male, and not African-American (*id.*). Plaintiff argues that these actions "occurred under circumstances giving rise to an inference of discrimination" based on these facts alone, despite that: (i) the selected candidates were also qualified and had relevant experience for these two positions (*see e.g.*, Pl. Dep, Ex B, 67, 83:1-4; 117-121); (ii) Brown is in all the same protected classes as Plaintiff and promoted her roughly two years earlier (Ex L, P)[3], and (iii) there is no evidence of discriminatory animus by Brown  (Pl. Mem. pp. 12-13).  These circumstances do not support an inference of discrimination.

<u>Plaintiff has otherwise failed to demonstrate pretext</u>: Even if Plaintiff met her initial burden, she has utterly failed to demonstrate that Defendants' legitimate, non-discriminatory reasons for these decisions were pretexts for discrimination.  She merely proffers the following in support of a pretext argument (*id.* at 13-14):  1) Brown "untruthfully testified to giving Plaintiff a second interview"; 2) Brown gave "non-consistent reasons for the promotions"

---

[2] Plaintiff concedes that she is not challenging the TA's decision to appoint Joseph DiLorenzo to the PMO position under Title VII, but asserts this claim under Section 1981 (Pl. Mem. p. 6, fn. 1).

[3] Contrary to Plaintiff's assertion, *citing*, *Carlton v. Mystic Transp., Inc*., 202 F.3d 129, 137-138 (2d Cir. 2000) (wherein 7 years passed in between firing and hiring in Carlton), the "same actor inference" is particularly strong in this case where only two years had passed. *See, e.g.*, *Rikhy v. AMC Comp. Corp.*, No. 01 Civ. 7007(WHP), 2003 U.S. Dist. LEXIS 4804, *2-3, 13-14 (S.D.N.Y. Mar. 28, 2003).

because she alleges Brown told Plaintiff that the "position was not the right fit for her"; 3) The panel did not ask a question about technology; and 4) Deborah Chin should not have been on the panel even though she has a "bias against Plaintiff"". <u>First</u>, Brown does recall giving second interviews to all four candidates referred by the panel for the PMO position, including Plaintiff, and she had interview notes of these interviews (bates 3794-3795 produced in discovery to Plaintiff); *see* Ex C at 35:15; 42:4 (errata corrections).  Regardless, whether Plaintiff had a second interview or not is immaterial to this case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("[f]actual disputes which are irrelevant or unnecessary" to the claims at issue "will not be counted.").  It is undisputed that while the panelists referred Plaintiff as one of the top four candidates, she was not ranked first by anyone (*see* Chin Dec. ¶ 29-30; Franceschini Dec. Ex G [TA 878-881] and Pl. Resp. ¶86 [citing to no admissible evidence]).

Second, even assuming, *arguendo*, that Brown did say words to the effect of: "this is not the right for you" with respect to DiLorenzo's job, such a statement is similarly immaterial and nonetheless entirely consistent with Brown's explanation that she chose Dilorenzo based on, *inter alia*, his years of experience in stations and his technical background (which Plaintiff did not have) (*see* Ex C at 26-27; Ex G).   <u>Third</u>, Plaintiff apparently seeks to undercut Brown's business judgment that she wanted individuals with technical backgrounds in certain program areas, by stating that the panelists did not ask a question relating to technology – again an irrelevant point even if true.  Not-withstanding, the panelists clearly considered the individuals' resumes (including their educational/technical backgrounds), in assessing candidates. *See* Chin Dec.¶20-21; *see* Ex G (TA 878-881).  <u>Fourth</u>, Plaintiff statements regarding Chin's involvement in the panel are confusing.  Apparently she is arguing that Chin was "biased" against her because of their direct work-related experience, and seeks to undermine their interactions (Pl. Dec. ¶40-45), despite testifying that she worked "extensively" with Chin, that they attended meetings together "frequently", that Chin had knowledge of Plaintiff's "performance more than anything"

(*see* Ex B, Pl. Dep. at 105).  The undisputed (*id*.) fact is that Chin did not recommend Plaintiff for the job based on weaknesses she perceived in her performance, having nothing to do with Plaintiff's age, race or gender.  Plaintiff also argues that Defendant Brown has "no African American females over the age of 60 as a Senior Director reporting to her" (Pl. Mem. at 15) – an utterly unavailing fact even if assumed to be true.  Brown's hiring decisions with respect to other positions are not at issue in this case.[4]  Regardless, Defendants have shown, in light of this improper insinuation, that Brown's highest direct report is a 64 year-old African-American male and was promoted twice by Brown (in 2013 and 2016)(*see* Pl. Resp. ¶105), and that Brown has advanced numerous older and/or African-American and/or female applicants and employees. *See* Ex Z; *see* Brown Dep., Ex C at 190-216.

<u>Plaintiff's Section 1981 and 1983 claims fail</u>: Apparently in support of an argument that she has sustained her burdens under Sections 1981 and 1983 (Pl. Mem at 16), Plaintiff states that Vice President, Subways Joseph Leader was "indifferent" to her complaints of discrimination, contradicting her explicit testimony that she "did not discuss discrimination with Joe Leader" at her August meeting with him (*see* Pl. Dep. Ex B at 125-127), and ignoring the fact that her complaint to him about Chan's 2014 MPR was immediately forwarded to the TA's Department of EEO & Diversity (EEO)(*see* Ex II).  The record demonstrates that EEO conducted a nearly 7-month investigation into Plaintiff's claims, including interviewing Plaintiff, Brown, all interview panelists and other identified witnesses, and reviewing all of the evidence (Ex G).  Plaintiff speciously argues that Brown "should have" contacted EEO as soon as Plaintiff objected to Brown's decision to hire Chan, despite the fact that she did not to complain to Brown about discrimination or talk to Brown about her issues with Chan (*see e.g*., Pl. Dep. at 129-131; e.g., EE) and that EEO addressed these complaints.   All of these claims

---

[4] Further, the declarations speculating about "favoritism" in the Capital Programs unrelated to any protected ground (*see*, *e.g.,* Ken Pierce Dec; Earl Jackson Dec.) should be disregarded as immaterial and inadmissible.

must be dismissed.[5]

**B. PLAINTIFF'S RETALIATION CLAIMS DO NOT SURVIVE SUMMARY JUDGMENT**

In support of her claims of retaliation, Plaintiff alleges three acts of retaliatory discrimination (Pl. Mem. at 18): (1) Brown and Chan's discriminatory reduction of her yearly Managerial Performance Reviews ("MPRs"); (2) Defendant Brown's denial of Plaintiff's civil service designation; and (3) Defendants Brown and Chans' creation of a retaliatory hostile work environment for plaintiff.  **i) Plaintiff has failed to establish temporal proximity with respect to any purportedly "adverse employment action"**: As Plaintiff states (Pl. Mem. at 22), to establish the necessary causal nexus for retaliation, she must show either that the protected activity was closely followed by the act, disparate treatment of other employees who engaged in similar conduct, or direct evidence of retaliatory animus.  *See Hunter v. Police Athletic League, Inc.,* No. 09 Civ. 997 (DAB), 2011 U.S. Dist. LEXIS 31243, *20-25 (S.D.N.Y. March 23, 2011).  Plaintiff has not shown any of the above.   Plaintiff misleadingly and unsuccessfully relies on a Notice of Charge of Discrimination dated May 18, 2015 addressed the TA Law Department to try to establish that a purportedly "adverse" action in this case, i.e., the first overall "Good" MPR she received by Chan, closely followed her protected activity (Pl. Mem. at 22; Def. Br. at 14).  However, according to records, the 2014 MPR was (at the latest) prepared by Chan on May 15, 2015, prior to the date on the Notice, and Plaintiff's complaints of retaliation against Chan to EEO well pre-date this MPR (*see e.g.*, Pl. Dep. Ex B at 139:1-12; Ex EE).   Even if this erroneous theory (Pl. Mem. at 22) were accepted, however, her receipt of an overall "Good" review is not "adverse" (*see* Def. Br. at 13-14), nor is it "hostile", which Plaintiff appears to acknowledge.   In fact, she argues that Defendants strategically retaliated against her over the course of *three years* by lowering her

---

[5]To the extent there any age-related claims against Brown and Chan unrelated to her promotions, Plaintiff has failed to present any facts supportive of such claims, such as identifying a single similarly-situated younger employee compared to whom she was disparately treated.  *See Woods Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 524 (S.D.N.Y. 2007).  These claims should be deemed abandoned and dismissed.

ratings from "Excellent" to "Needs Improvement", so that she would not get a "wage increase" in 2017, despite having received one in 2015 and 2016.  This argument is legally unavailing, and not supported by any evidence. *See, e.g., Hunter*, 2011 U.S. Dist. LEXIS (summary judgment granted where Plaintiff's salary was reduced thirteen months after her first complaint). In addition, Chan was a new manager, had never rated Plaintiff as "Excellent", and was entitled to set his own performance expectations for his reports.  Thus, the fact that Plaintiff previously received overall "Excellent" reviews from other managers does not create an inference of retaliation (Def. Br. at 14-15), and the fact that her issues with prior management began before she complained of discrimination further undermine such an inference (*see e.g*., Ex V, Kauffman Dec).

Regarding Brown's decision not to recommend Plaintiff for permanent appointment in the "Administrative Staff Analyst" title, Plaintiff has failed to show how this was materially adverse (*see* Def. Br. at 21; Fraceschini Dec. ¶32-34), since she continued to benefit from civil service protections in her underlying non-competitive civil service title of Superintendent (to which she was placed in April 2015 from her provisional title of "Administrative Manager" in order to protect her from being displaced by a civil service list)(*id.* at ¶21-34).  Plaintiff retained the same job title, responsibilities and pay.  Even assuming this could be adverse, *arguendo*, Brown made this decision more than two years upon becoming aware of Plaintiff's complaint against her suggesting no temporal proximity (Def. Br. at 21).

**ii.    <u>Plaintiff has failed to allege disparate treatment</u>**

Plaintiff makes *no* suggestion of disparate treatment by Chan or Brown.  Quite conversely, she testified that she did not know how Chan managed other employees (Pl. Dep. at 188; 196-197; 217) or what Brown assigns others in the Division (Pl. Dep. Ex B [212:17-23). Moreover, she submits statements by other individuals Chan supervised who are outside of her protected classes (notably two significantly younger males), who did not engage in protected activity, who complained about the same management style he employed with them unrelated

to Plaintiff (*see* Jackson Dec and Weinzimmer Dec., e.g. ¶14-15)).   The evidence also shows that Chan rated other employees similarly and even terminated another significantly younger, Caucasian male for poor performance (*see* Ex ZZ), contradicting Plaintiff's theory that she was targeted based on retaliatory or discriminatory animus.

### iii.   **Plaintiff has utterly failed to show that Defendants' non-discriminatory legitimate reasons for its actions were false or pretext for discrimination or retaliation**:

The undisputed records are replete with Defendants' legitimate, non-discriminatory reasons for Plaintiff's MPRs and other actions.  Plaintiff's 2014 MPR was based on input from Plaintiff's manager for most of 2014, and based on Chan's own experience with Plaintiff, wherein they both felt, among other things, that she was being uncooperative and withholding information  (Ex's, KK, MM, T).  Plaintiff had three marginals on her otherwise overall "Good" MPR for the year 2015 (Ex OO) because, among other things, she missed deadlines on a long-term assignment (Ex PP), had to attend a respectful workplace course (Ex OO), and had incidents wherein she failed to properly respond to Brown with information urgently requested (*see e.g.*, Ex EE, TA 808-811; Ex VV, TA 1740-45; Ex C at 310-316).   In 2016, when there was a new rating system (there were no "good" or "poor" ratings, but "Meets Expectations" and "Needs Improvement"), Plaintiff received a "Needs Improvement" on her review (administered in April 2017)(Ex SS), based on her continued failure to perform the tasks assigned to her and her continued disrespectful behavior. *See e.g.*, Ex VV, TA297-299 (objections to the Communication Strategy assignment given to her in August 2016); Ex RR.  By 2017, Plaintiff's performance and attitude had deteriorated, and she was disrespectful to Chan in front of other employees (Ex's TT, UU).

When Brown declined to recommend Plaintiff for permanent appointment to the "Administrative Staff Analyst" title, it was the result of these performance issues at that time, in addition to her belief that it would give Plaintiff "an opportunity to get employment in another

area" having said that she was unhappy in the unit (Brown Dep., Ex C at 363:11-18).  Plaintiff has failed to present evidence suggesting that any of these stated reasons are false, but merely relies on her failing argument of temporal proximity (Pl. Mem. at 24), and, attempts to provide evidence of inconsistency in the Defendants' explanations.   However, all the purported "inconsistent" explanations she discusses occurred prior to Plaintiff's first complaint of discrimination in September 2014, have nothing to do with her performance issues and clearly do not suggest retaliatory animus (*see* Pl. Mem. at 24-25, *e.g.*, "Brown attempted to "appease" Plaintiff by recommending her for the NYC Leadership institute the same day as she gave Plaintiff the bad news that she was not going to promote her" and "Brown's statement is voided by her reprimand to Plaintiff that "I told you not to go to my boss showing the animus Brown has toward Plaintiff for complaining to SVP Leader about not being promoted and wanting a transfer out of Capital Programs").  Her retaliation claims must be dismissed.

### iv)      Plaintiff's allegations are clearly insufficient to show hostile work environment

Plaintiff's allegations of retaliatory or discriminatory hostile work environment based on negative performance reviews, work-related emails and vacation request denials fail as a matter of law (Pl Mem.  at 20-23; *see* Def. Br. at 23-24). There is no evidence that Plaintiff suffered a work environment pervaded by "discriminatory [or retaliatory] intimidation, ridicule, [or] insult." *See Villar v. City of New York*, 135 F. Supp. 3d at *6 (internal citations omitted). Though Plaintiff's relationship with Chan may have been unpleasant, and their work correspondence at times tense, all the harsh comments she asserts he made concerned work scrutiny and her job performance and the assignments, and were completely unrelated to any complaint she filed or her race, gender and/or age.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment should be granted in its entirety, and for such other and further relief as this Court may deem just and proper.

Dated:  Brooklyn, New York.
        May 2, 2019

Respectfully submitted,
**DAVID I. FARBER**
Vice President & General Counsel
Attorney for the Defendants
130 Livingston Street, - Rm 1212
Brooklyn, NY 11201
(718) 694-3893
**By: /s/*Mariel A. Thompson***
**MARIEL A. THOMPSON**